### TURNER v. BALDWIN et al.

### MOORE v. TURNER et al.

(Supreme Court, Appellate Division, Third Department. March 11, 1903.)

1. CONTRACTS—ELECTION.

Where, after judgment for a partition sale, one of the two joint tenants agreed with judgment creditors having a lien on the interest of the other tenant that he would purchase the property and hold as trustee for them, and that if, at the end of a year, it had not been sold, they might elect to take the entire property on paying him $4,000, or that he might pay them that sum and retain the entire property, if the creditors desired to secure the property, it was their duty to elect to do so at the expiration of the year, or within a reasonable time.

2. SAME—EVIDENCE—ELECTION.

Where one of the judgment creditors after the expiration of the year received the amount of his judgment from the purchaser, there was a ratification by him of the retention of the property by the purchaser.

3. SAME—EVIDENCE—RATIFICATION.

It appearing that one of the creditors, knowing that another had been paid the amount of his judgment by the purchaser, allowed her husband to have possession of the tax certificate on which her judgment was based, and that she knew that he was negotiating with the purchaser for a settlement, a ratification by her of retention of the land by the purchaser was shown.

4. SAME—ELECTION.

Creditors having acquiesced in the purchaser's retaining the property for 15 months after the expiration of the year, no steps on their part could amount to an election to take the property. binding on the purchaser.

Appeal from Trial Term, St. Lawrence County.

Action by Charles H. Turner against H. K. Baldwin and others, and an action by Jessie C. Moore against Charles H. Turner and others. From a judgment in the first action in favor of plaintiff, and from an order allowing costs to plaintiff and granting plaintiff an extra allowance of costs, defendants appeal, and from a judgment in favor of defendants Charles H. Turner and The People's Bank of Potsdam in the second action, and from an order directing costs to be taxed to each defendant, plaintiff appeals. Judgments and orders affirmed.

In 1897 Charles H. Turner and Frank W. Moore were the owners, as tenants in common, of about 3,642 acres of land in township 9, Kildare, St. Lawrence county, N. Y. Said lands, or some part thereof. had been sold by the Comptroller of the state of New York in December, 1895, for taxes, and the certificates of said tax sale had been assigned to said Charles H. Turner and Jessie C. Moore, the wife of said Frank W. Moore. In February, 1897, four judgments were obtained and docketed against said Frank W. Moore, and

became liens on his interest in said real property. Said judgments, in the order of their priority, were as follows: One in favor of Henry K. Baldwin and Constance Baldwin for $417.08; one in favor of Daniel B. Barnet and Patrick J. Barnet for $527.84; one in favor of Daniel B. Barnet for $3,303.42, and one in favor of said Jessie C. Moore for $1,179.33. The judgment in favor of said Daniel B. Barnet was, within a few days after its recovery, assigned to Helen L. Barnet. In April, 1897, Charles H. Turner commenced an action for the partition of said real property, in which action the judgment creditors were parties defendant. Judgment for the sale of said real property was obtained, and the sale was advertised to take place on the 21st day of September, 1897. The judgment of sale provided for the payment of the costs of the action, and also that from the part of the proceeds of sale belonging to said Frank W. Moore the inchoate right of dower of said Jessie C. Moore should be ascertained and paid, and that the balance thereof should be paid on said judgments, according to their priority, so far as the money applicable thereto would pay the same. The said decree also provided that all persons having any papers or writings in any manner affecting or pertaining to the title of said property should deliver the same, on demand, to the purchasers of the property at said partition sale. On said 21st day of September, 1897, an agreement was entered into by and between said Charles H. Turner and said judgment creditors, by which agreement, after various recitals, it was provided:

"Now, therefore, for a valuable consideration and for the mutual protection and benefit of all the parties interested, it is agreed by and between the parties hereto that the said Charles H. Turner shall, for and in the interest of all the above-mentioned parties, bid upon said premises, and shall purchase the same, provided that the bids upon said property shall not exceed the sum of eight thousand ($8,000) dollars. In case the said Charles H. Turner choose to bid beyond said sum, then, and in that event, the said Turner shall not bid for and under this agreement, but shall be deemed to purchase it for himself, and to be purchased outside of this agreement. In case the said premises are struck off to said Turner for a sum less than the above-mentioned eight thousand ($8,000) dollars, then, and in that event, the said Turner shall take title to said property as follows: For and to an undivided one-half interest in said property for and on account of the interest which he holds, and he shall provide for the payment of the said two thousand ($2,000) dollars mortgage. As to the other undivided one-half interest, he shall be deemed to take and hold it in trust for the benefit of the parties of the second part, with full power to bargain, sell, and convey the same, and the whole thereof, at any time. agreeing, however, that he shall not convey the said premises for less than the said sum of eight thousand ($8,000) dollars without the written consent of the parties to this agreement. In that event that the said Turner shall sell said property pursuant to this agreement, then and in that event the one undivided one-half interest of the proceeds of such sale shall be and belong to him, and the other undivided one-half interest of the proceeds of such sale, less one-half the amount of the costs and expenses of said partition action and the expense of such sale and taxes, he shall hold in trust and pay to the said judgment creditors according to the priority of their liens. And it is further agreed that the said Turner shall not in any event be required to pay the purchase price which he may bid on such sale, but the same shall be paid by satisfaction of the said judgments or receipts from the parties of the second part. It is further agreed that, in the event that the said Charles H. Turner shall fail to sell said property within the period of one year, then, and in that event, at the expiration of one year he agrees to take the sum of four thousand ($4,000) dollars, together with any sum which he has advanced for the interest of the parties of the second part, for his undivided one-half interest in said premises, or to give to the parties of the second part, according to their respective interests, the sum of four thousand ($4,000) dollars, less any sum which he may have advanced for their benefit, for their interest in said property, at the election of the parties of the second part."

The sale occurred on said 21st day of September, and Charles H. Turner became the purchaser of the property at $4,250, and a deed in the ordinary

form of a deed in partition was executed by the referee to him. Turner did· not sell said property within one year after his purchase of the same at the· partition sale.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and LYON, JJ.

C. A. Kellogg, for appellant.

Theodore H. Swift, for respondents.

CHASE, J.   At the partition sale Turner could have purchased the property at $8,000, and, as between the parties to the action, it was only necessary for him, in settlement of his bid, to· pay to the parties of the second part in the agreement according to the priorities of their claims one-half of such bid.   At any time during the year Turner could have sold the property to any person for $8,000 and applied one-half of the proceeds thereof in payment of the claims of the parties of the second part in the agreement according to their priority.   The only limitation on Turner's "power to bargain, sell, and convey the same, and the whole thereof, at any time," was at the expiration of the year, when, according to the agreement, the parties of the second part thereto had the right to elect between paying Turner $4,000 and accepting a deed from him of the entire property, or of compelling him to pay them $4,000 and have him retain the title to the entire property.   It was the duty of the parties of the second part to said agreement to exercise such election immediately, or at least within a reasonable time after the expiration of said year.· It is conceded that they did not, at the expiration of the year, exercise such election in favor of taking the property,·and. there is no evidence of any desire so to do for about 15 months: thereafter.   The record clearly shows that Turner understood that. the parties of the second part to the agreement, and each of them,. had exercised their election in favor of his having the property.   He, with full power to sell said property at $8,000, elected, so far as it was possible for him so to do, to retain the property for himself at that price.

The trial court has found that, at or about the expiration of the year mentioned in said agreement, the parties of the second part thereto elected that the said Turner should take the half interest of said Moore in said property and pay therefor the sum of $4,000, as provided in said agreement, and that said Turner was at that time, and ever since has been, ready and willing to carry out said agreement on his part, and has tendered performance on his part thereof. If such finding of the trial court is sustained by the evidence, there can be no question about the correctness of the conclusions drawn therefrom.

The election of H. K. Baldwin & Co. was ratified and confirmed by their receiving from Turner the amount of their judgment and satisfying the same.   The evidence to sustain the finding that Barnet Bros. and Helen L. Barnet elected to take their money and let Turner· have the property under the agreement is overwhelming.   Frank W.. Moore, assuming to act· for Jessie C. Moore, his wife, elected to· have Turner take the property.   Jessie C. Moore not only did not do·

anything toward purchasing Turner's interest in the property, but she knew that Turner paid H. K. Baldwin & Co. their judgment under the agreement at the time when it was paid, and she allowed her husband to have possession of the tax certificates owned by her with Turner, and never protested in any way against the course that was being pursued by Turner until 15 months after the time mentioned for the judgment creditors to exercise their election. The delay by Turner in carrying out the agreement on his part seems to have been occasioned by his inability to obtain the tax certificates of 1895, and their transfer to him, as provided by the decree in partition. These certificates were owned by Turner and Jessie C. Moore, but Turner did not have possession of them. Frank W. Moore claimed that they had been lost, but subsequently they were found, and a meeting was arranged between Turner and said Frank W. Moore for the avowed purpose of closing up the land transaction. Frank W. Moore appeared, pursuant to the arrangement, and had possession of said tax certificates so owned by his wife and Turner, and assumed to act for Jessie C. Moore in connection therewith. Turner had a tax search from the Comptroller's office, and a computation was made of the amount due for taxes, and also the amount to be paid to each person pursuant to the agreement. Turner was prepared and ready to pay $4,000, as provided by the agreement. Moore then claimed that the Barnet judgments were too large, and asked that the checks for the several amounts under the agreement should be made payable to him personally, and stated that he would go around and settle with the others, and in that way get something out of it for himself. Jessie C. Moore would not realize anything on her judgments if the prior judgments and claims were paid in full. Turner refused to make the checks payable to Frank W. Moore individually, but offered to give him checks payable to the several parties to the agreement. Moore left without taking the checks. After the statements made by the several parties to the effect that Turner should have the property under the agreement, a mortgage was given on the property by Turner to the People's Bank of Potsdam, and an agreement was made by Turner to sell the property. During the delay, in closing the transaction, the property increased in value, and Jessie C. Moore, in December, 1899, purchased the Barnet judgments, and entered into some kind of an agreement to sell the property to a third person. Thereafter she obtained the signatures in her behalf of all the parties of the second part in the agreement, electing to purchase the property of Turner, and tendered to him $4,000, and demanded a deed of the property, which he refused to give. The trial court has found that this was not an election under the agreement, and that the parties to such election had no power at that time to bind Turner under the agreement, for the reason that their time so to do had already expired.

The tax certificates remained outstanding in the name of Jessie C. Moore and said Turner. Demands were made each upon the other, and these actions were brought, each to require the other to perform his part of said agreement, and by stipulation they were tried as one action.

The judgments are sustained by the facts as found by the trial court. The entire controversy is mainly one of fact, and the judgments depend upon the correctness of the findings of fact. We are of the opinion that the findings are not against the weight of evidence, and that the judgments should be sustained.

The judgments and orders should be affirmed, with one bill of costs in favor of the respondents against the appellant.