VILLAGE OF LONG BEACH et al., Plaintiffs, *v.* LONG BEACH POWER COMPANY, Defendant.

(Supreme Court, Kings Special Term, August, 1918.)

Easements — granted public service corporation upon certain conditions — corporation not permitted to repudiate conditions — contracts — electric light companies.

Injunctions — pendente lite — when granted — undertakings.

A public service corporation which has accepted and enjoyed the benefit of an exclusive right or easement over private property in aid of a franchise granted upon condition that it would render a certain service at a certain rate of compensation for a definite period of time will not be permitted to repudiate the condition and still claim the benefit of the property rights, easements and franchise so granted.

Where the agreement, pursuant to which defendant, an electric lighting company, was granted an exclusive franchise to use the streets of a municipality, creates an easement in perpetuity over private property and provides *inter alia* that it is made subject to certain conditions and provisions which are stated to be of the essence of the grant, one of which is that the cost to any and all private consumers shall not be in excess of fifteen cents per kilowatt hour, the defendant cannot increase

22

the rate at which it will supply electric light to such customers within the territory referred to in the contract over the maximum rate specified therein even if the advance in such rate be authorized and approved by the public service commission.

In an action to restrain defendant from demanding or collecting more than the contract rate plaintiffs will be granted an injunction *pendente lite* upon condition that they, other than the municipality, furnish an undertaking in the sum of $3,000, in the usual form to be approved by a justice of this court.

Application for an injunction *pendente lite.*

Charles C. Clark (John L. Wells, of counsel), for plaintiffs.

Anderson, Iselin & Anderson (Ellery O. Anderson, of counsel), for defendant.

Benedict, J.   This is an application for an injunction, *pendente lite,* restraining the defendant from demanding or collecting more than fifteen cents per kilowatt hour for electrical lighting current furnished by the defendant to private consumers in Long Beach, Nassau county, N. Y., and for other relief.

At the threshold of the controversy there is presented a question which, as I view it, is determinative of the rights of the parties to this action, or at least which is controlling in so far as the right of the plaintiffs to injunctive relief pending the action and until the trial is concerned.   Were it not for the fact presently to be stated I should be disposed to agree with the contention of the learned counsel for the defendant in point five of his able and exhaustive brief that the defendant, being a public service corporation and subject to the jurisdiction of the public service commission, any consumer aggrieved by its schedule rates established as provided by the Public Service Commissions Law has an adequate remedy under that statute, which should be exhausted before application to a court

of equity for the extraordinary relief by injunction
*pendente lite.* The fact which interferes with the
application of the rule just stated to the present situa-
tion springs from the contract entered into on April
12, 1910, between the Estates of Long Beach, a corpo-
ration, and the defendant. At the time when the agree-
ment was entered into the Estates of Long Beach, one
of the plaintiffs in this action, was the owner of a con-
siderable tract of land on the island of Long Beach,
Nassau county, N. Y., which included the present vil-
lage of Long Beach. It had, in order to enable it to
develop and sell lots and parcels of its property, filed
a map upon which its property was divided into blocks
or plots with intersecting streets laid down thereon.
It was its purpose in making the said contract with
the defendant to secure the introduction of electricity
upon its property for electric light, heat and power
both to the Estates of Long Beach and to persons and
corporations within the limit of the company's said
property and elsewhere. To this end the Estates of
Long Beach granted to the defendant the exclusive
right and franchise for the term of 999 years from the
date of the agreement " to erect, construct, maintain
and operate under the streets, avenues, boulevards,
and boardwalk laid out over the company's property
at Long Beach and over the property of residents and
other consumers, in accordance with the easements
reserved through said property by the said Estates of
Long Beach, a conduit or conduits, and all appropriate
and proper ducts, mains, pipes, cables, feeders, man-
holes, poles, wires, fixtures, transformers, and all other
appropriate apparatus and equipment of every kind
and nature for the conducting, transmitting, furnish-
ing and selling electricity for electric light, heat and
power, and other purposes, through, over and under
the said property of residents and other consumers in

accordance with the easements reserved through said property by the said Estates of Long Beach for the purpose of lighting the same and other property, within the limits of said Estates of Long Beach, and any and all residences, stores, hotels, places of amusement or other buildings erected or to be erected and situate upon the property of said Estates of Long Beach, or to furnish such light, heat and power to other consumers, including both property to be used or developed in connection with the property aforesaid, upon the terms and conditions herein set forth.'' It will thus be seen that this provides for something more than a simple franchise granted by a municipality to use its streets. It is a grant of an exclusive right or franchise which is connected with private rights of property and creates an easement in perpetuity over private property. This agreement further provided, among other things, that it was made subject to certain provisions and conditions therein mentioned which were stated to be of the essence of and conditions of the said grant. Among these conditions was the following:

'' XIII. The cost to any and all consumers of electric current except as hereinabove provided shall not be in excess of fifteen cents (15c.) per kilowatt hour. Consumers where meters are not installed shall be classified upon some reasonable and sufficient basis of classification, or in accordance with the amount and kind of service appliances installed, and the charges for electric current to consumers in each of such classes shall be uniform. The Power Company shall have the right, however, to charge an annual minimum rate of twelve Dollars ($12.00) to any and all consumers. The Power Company shall have the right as a prerequisite to the installation of service to demand a deposit by a consumer of a reasonable sum as an evidence of good

faith, and to guarantee the performance of his contract. Such deposits shall be uniform and in accordance with the prices to be charged for furnishing electricity, and shall be returned to the consumer upon the compliance by him with the terms of his contract.''

Thereafter the Estates of Long Beach sold numerous lots or plots of land shown upon the map, reserving in every case an easement for the benefit of the defendant as mentioned in the agreement; and under the terms of the said agreement and in pursuance of the easement so granted the defendant has entered upon and made use of its easements over the lands shown upon the map above referred to.

Under this state of facts I am of the opinion that the defendant cannot increase the rate at which it will supply consumers of its electrical product in the territory referred to over the maximum rate specified in the said contract, even if the advance in such rate be authorized and approved by the public service commission for the second district. The agreement having been entered into for the benefit of all persons who should purchase land from the Estates of Long Beach subject to the easement mentioned, the defendant cannot be heard to repudiate the contract so entered into as to the rate at which it will supply electric light to such consumers and at the same time be permitted to retain the benefits, property rights, easements and franchise conferred upon it by the contract. In my judgment the defendant does not present to a court of equity very clean hands when it seeks to hold the benefits of the agreement and repudiates the burdens which the agreement imposes.

The fact that the defendant has filed a new schedule of rates to be charged by it to private consumers of twenty-five cents per kilowatt hour in certain cases, or even that the public service commission for the second

district has approved of that increase in the rate, does not justify the defendant's action. It is, of course, true that contracts which violate the positive legislation of the state by being contrary to its Constitution or statutory enactments will not be enforced, and it is also true as a general rule that contracts which violate the fixed public policy of the state will also not be enforced by the courts. It would, however, be both illogical and unjust to permit a public service corporation, which had accepted and enjoyed the benefit of an exclusive right or easement over private property in aid of the franchise granted upon condition that it would render a certain service at a certain rate of compensation for a definite period of time, to repudiate the condition and still claim the benefit of the property rights, easements and franchise so granted. I am not aware of any principle of equity which would justify one party to a contract in refusing performance of its conditions and at the same time holding on to its benefits. Even in a court of law such a rule would not be recognized, and, surely, a court of equity is not less powerful to do justice. Where the equities are clear the court should not be slow in furnishing the remedy. In the words of Sir R. Pepper Arden, Master of the Rolls, afterward Lord Alvany: " I must forget the name of the Court in which I sit, if I were to refuse to grant relief." See *Lord Cranstown* v. *Johnston,* 3 Ves., Jr., 170.

It is not necessary now to inquire into or determine the collateral question which presents itself by the defendant's action as to whether it has not forfeited the exclusive property rights, easements and franchise conferred upon it by the agreement of April 12, 1912, by reason of its breach of the condition as to the rate upon which the grant was predicated. That question may properly be reserved for consideration at a later stage of this case or in some other action.

In conclusion, I think that the individual plaintiffs have shown facts such as to require this court to continue the preliminary injunction until the trial of this action, but such injunction should be conditioned upon their furnishing to the defendant security in the form of an undertaking in the sum of $3,000 in the usual form, to be approved by a justice of this court. As the injunction is to be held for the benefit of the individual plaintiffs, it will also be held for the benefit of the plaintiff, the village of Long Beach, but as this is a municipal corporation no undertaking will be required to be given by it.

Ordered accordingly.