PAVILION NATURAL GAS COMPANY, Plaintiff, *v.* WILLIAM HURST,
Defendant.

Supreme Court, Wyoming County, July 16, 1924.

Gas and electricity — contract of leasing of natural gas and oil lands —
action for gas furnished defendant following plaintiff's repudiation of
lease providing for payment of annual rental to defendant plus supply
of sufficient gas to light and heat defendant's premises — plaintiff
after giving repudiation notice charged defendant for gas at regular
rates — failure of defendant to consent to repudiation of lease — con-
tract not of sale of gas but one of leasing of potential gas and oil pro-
ducing lands — lease did not stipulate rate — defendant plaintiff's
landlord,   not   customer — Public   Service   Commission   Law   not
controlling between parties — lease in contract protected from abro-
gation — complaint   dismissed — defendant   granted   judgment   for
counterclaim for unpaid rental.

Plaintiff's complaint, in an action to recover for a specified amount of natural
gas furnished by it to the defendant for heat and light, should be dismissed
and a judgment granted defendant on a counterclaim for the unpaid rental on
a contract of leasing natural gas and oil lands where it appears that following
the coming in of the gas well in 1911, the lease, executed in 1903 between the
plaintiff's assignor and the defendant, was made final by an election between
the parties to the effect that the plaintiff would pay the defendant $50 annually
as rental and furnish sufficient gas to heat and light defendant's residence;
that no rate was stipulated in the lease; that in 1918 the plaintiff by letter gave
notice to the defendant of its repudiation of the provisions of the contract
by stating that all future rentals would be at the rate of $100 annually and
that gas consumed by the defendant would be charged for at the regular rates
paid by customers; that the defendant never consented to the repudiation or
change in the lease; and that the contract is not one primarily of sale of gas by
a public service corporation, but a contract of leasing potential gas and oil pro-
ducing lands by the defendant, as plaintiff's landlord, rather than its customer.

The Public Service Commission Law is not controlling between the parties since
the rates fixed by the public service commission, which the plaintiff seeks to
invoke upon the defendant, were fixed in proceedings to which the defendant
was not a party and to which he had no notice that his rights under the lease
were to be adjudicated.

*It seems,* that the lease is a contract protected from abrogation by the state and
federal Constitutions.

ACTION upon a contract of leasing of natural gas and oil lands.

*R. T. Gallagher* (*James M. E. O'Grady,* of counsel), for the
plaintiff.

*Michael L. Coleman,* for the defendant.

NORTON, J. The plaintiff seeks to recover in this action $638.37
for 1,313,000 cubic feet of natural gas furnished by plaintiff to
defendant for heating and lighting his dwelling from August 1,
1918, to August 1, 1922, at the varying rates fixed and charged for

the sale of gas by plaintiff to its customers, as in force during that period, less the sum of $300, which plaintiff credits defendant with.

From the year 1911 on, gas was furnished by plaintiff to defendant pursuant to, and under the terms and provisions of a lease made by plaintiff's assignor with defendant, which reads as follows:

## " Oil and Gas Lease.

"Agreement of Lease made this 30th day of October, 1903, between Wm. E. Hurst of Wyoming, N. Y., party of the first part, and D. L. Brown & Co., of Canandaigua, N. Y., party of the second part, *Witnesseth:*

" That the party of the first part does hereby grant unto the party of the second part for the term of five years, and so long thereafter as Oil or Gas is produced from the lands leased or as the rentals are paid thereon, the exclusive right to drill and operate for Oil and Natural Gas on all that tract or parcel of land in the town of Middlebury, county of Wyoming, State of New York, bounded, North by Highway, East by Highway, South by Powers. Est. & Roper, and West by Mooney & Coe, containing 141 acres, more or less, reserving, however, therefrom 5 acres around the buildings on which no well shall be drilled by either party except by mutual consent.

" In Consideration of the Premises the said party of the second part covenants and agrees:

"*First.* To complete one well on the above described premises within three years from date, or in case of failure to do so to pay thereafter an annual rental of Ten dollars, either directly to the first party or by deposit to his credit in the Wyoming Banking Co. of Wyoming until such well shall be completed, or this lease surrendered for cancellation.

"*Second.* That in case gas in paying quantities is found on said premises, to pay said first party for wells producing 250 M. cu. ft. per day, or more, $100 per year, or $50 per year and sufficient gas to heat and light the residence of the party of the first part, gas to be taken from the well on said premises or nearest pipeline.

"*Third.* That if oil is found, to deliver into tanks or pipe lines to credit of the first party, free of charge, one eighth of the production.

"*Fourth.* That, in the locating of a well on said premises the first party shall be consulted as to its location.

"*Fifth.* That all crops damaged by entering said premises for drilling shall be paid for at the rate of $40 per acre for the amount actually damaged or destroyed.

"*It is agreed* that the second party shall have the privilege of using sufficient water from the premises to run all necessary machin-

ery, and at any time to remove all machinery and fixtures placed on said premises, and further, shall have the right at any time to surrender this lease to first party for cancellation, after which all payments and liabilities to accrue under and by virtue of its terms, shall cease and determine, and this lease become absolutely null and void."

Under such lease plaintiff held the exclusive right to drill on defendant's said premises for gas and oil from its date in 1903 until the trial. It now claims such continuing exclusive right thereunder.

In 1911 plaintiff drilled a well on said premises and struck a flow of gas in excess of half a million cubic feet per day, which well from that time on has continued to produce gas in paying quantities, which plaintiff has drawn therefrom and sold.

After completing such well and striking such flow of gas, defendant was by plaintiff notified thereof, and thereupon and during 1911 the defendant elected, under the terms of the lease, with the consent, concurrence and approval of the plaintiff, to accept as the annual rental of said well and premises " $50.00 per year, and sufficient gas to heat and light his residence." Thereupon, defendant piped and installed the necessary equipment and fixtures to heat and light his residence, and prepared the trench from plaintiff's mains to his residence, and plaintiff furnished and laid the pipe and connected the same with the system so installed by defendant in his residence.

From that time until August 1, 1918, plaintiff paid defendant annually the rental for said well and premises contracted and agreed to be paid, viz., " $50.00 per year, and sufficient gas to heat and light his residence."

On April 27, 1918, plaintiff, by letter, gave notice of its repudiation of the provision of the contract for well rentals, or payment for the gas it drew from defendant's premises under said lease, in the following language, viz.:

" Effective Aug. 1st, 1918, said date on which your well rental becomes due, all further rentals will be paid for at the rate of $100.00 per year. All gas consumed by you will be charged for at the regular rate and must be paid each month."

Following such notice, plaintiff installed a meter and measured thereby all gas delivered by it to defendant, under the lease, during the period in question herein.

Defendant in no manner consented to such repudiation or change of said lease, and insists that plaintiff, so long as it occupies the demised well, draws defendant's gas from defendant's said premises by means thereof, and holds and insists upon the exclusive right

to drill for and withdraw oil and gas from defendant's premises under the provisions thereof, pay therefor, according to the terms of the lease, and the aforesaid election of the parties thereunder. Defendant denies any liability to plaintiff for the gas so furnished to defendant by plaintiff, and used by defendant " to heat and light his residence," and seeks to counterclaim herein for the " $50.00 per year " so contracted by plaintiff to be paid to defendant as part of such rental, and which has not been paid by plaintiff for the year 1918 and the succeeding years.

I am of the opinion that the election provided for by the lease, once made, was final and irrevocable, except by the action of both; that the election made in 1911, following the coming in of the well, concurred in, and acted upon by both parties for over seven years, bound and concluded the parties, as to the rental of the premises and well in question, irrevocably, except by mutual consent. 13 C. J. 629, 630, § 697; *Turner* v. *Baldwin*, 81 App. Div. 639.

Plaintiff contends that the Public Service Commission Law is controlling between the parties, as to the gas delivered by plaintiff to defendant, pursuant to the lease; that in such respect the lease is in conflict with such law and the orders of the public service commission thereunder, and is abrogated; that the rates fixed by plaintiff for the sale of its gas to its customers, and sanctioned by the public service commission, apply to the gas delivered by plaintiff to defendant, pursuant to the terms of the lease.   However, that plaintiff is somewhat in doubt on that  point is evidenced by the fact that plaintiff, on defendant's failure to pay the bills periodically rendered for the gas delivered to him after August 1, 1918, has not shut off the gas, but has continued to deliver it to defendant, as required by the lease.

The cancellation provision of the lease provides that plaintiff " shall have the right at any time to surrender this lease to party of the first  part [defendant] for cancellation, after which all payments and liabilities to accrue under and by virtue of its terms shall cease and determine, and this lease become absolutely null and void; " but it does not provide that plaintiff may repudiate the one provision thereof that has been beneficial to the defendant, and at the same time maintain that it is in all other respects binding. Plaintiff has not surrendered the lease, and does not seek its cancellation.   It stands on the lease.   It now draws from defendant's premises under the provisions thereof, according to the opinion of its foreman, at least 40,000 cubic feet of gas per day; for which plaintiff, at its present rates, receives between $11,000 and $12,000 per year.

Plaintiff claims that the defendant is, and insists that he remain,

its landlord; but that, by plaintiff's election, defendant has assumed the dual character of landlord and customer; that as customer, defendant must pay for the gas, which, under the lease, is drawn from his own premises and there, pursuant to its terms, delivered to him, at rates fixed by plaintiff, as sanctioned by the public service commission for the public in general; while as landlord, he must accept as rental for the demised premises and well, an amount arbitrarily fixed by plaintiff, without the sanction of any tribunal.

The contract is not one primarily of sale, by a public service corporation, of gas, a commodity, the sale of which is regulated by law, but it is primarily a contract of leasing of potential gas and oil producing lands, and of the paying quantity producing gas and oil wells drilled thereon, under the provisions thereof, with provisions for the delivery by the tenant to the owner of one-eighth of its product, if oil, and on the election of the owner, the annual payment of " $50.00," and delivery of " sufficient gas to heat and light his residence," if gas is the product, as consideration therefor.

By the lease, plaintiff agreed, as consideration for the exclusive rental of the 141 acres and the withdrawal of the gas therefrom, to pay defendant fifty dollars per year, and furnish gas to heat and light his residence. There is nothing in the lease in any wise fixing or stipulating the rates at which such gas is to be furnished. Plaintiff is to furnish the gas thereunder, so long as plaintiff keeps the lease alive; and it is no wise affected by the rates plaintiff may charge its customers for the gas it sells. Presumably, plaintiff will not keep the lease alive when to do so is unprofitable.

That plaintiff's selling rates are under the control of the public service commission is true. Pub. Serv. Comm. Law, § 66, subd. 12.

That an existing contract to furnish gas to a customer, at fixed rates for a stipulated period, would be abrogated by the increase of the rates, pursuant to an order of the public service commission, is established by authority. *Union Dry Goods Co.* v. *Georgia Public Service Corporation*, 248 U. S. 372, and cases quoted and cited therein.

But defendant is not a customer of plaintiff. It is his own gas that plaintiff is delivering to him, much as a tenant working a farm on shares delivers to his landlord the agreed share of the products of the farm for the use thereof. Defendant is plaintiff's landlord, not its customer. If the gas plaintiff is selling is more valuable, on account of a failing supply or changed conditions, then the gas plaintiff is taking from defendant's premises, under its lease, is correspondingly more valuable.

Had the lease provided that plaintiff, the tenant, pay a royalty

of one-eighth of the returns from the production of each well, or had it provided that the plaintiff deliver to its landlord, as rental, or as a royalty, one-eighth of the gas drawn from the leased premises by means of each well, as it specifically provides as to oil, it could not be claimed that the landlord was a customer of his tenant, and that such lease was subject to the Public Service Commission Law, and that such royalty or rental was abrogated by any order of the public service commission, that purports to do nothing but fix the rates that plaintiff must charge for the gas it sells to its customers, the public.

If the public service commission has the power, under the Public Service Commission Law, to abrogate said provision of the lease in question, and fix the rental of the well, or the amount to be paid for the gas withdrawn from the leased premises and well thereunder, which, however, is not decided, such power can only be exercised in a proceeding to which the defendant is a party in person. The rates fixed by the public service commission, herein sought to be invoked by plaintiff, were fixed in proceedings to which defendant was not a party. He had no notice that his rights under the lease in question were to be adjudicated by the public service commission, nor did the public service commission have said lease before it, or pass upon the lease, or adjudicate the rights of the parties thereunder.

Further, it does not appear that the public service commission has, in any manner, passed upon the rates, rentals or consideration plaintiff shall pay for the gas it procures for sale and distribution to the public.

In a case involving somewhat similar facts, viz., *Tonawanda Board & Paper Co.* v. *City of Tonawanda,* 198 App. Div. 760 (on p. 766), Mr. Justice Davis said, in the prevailing opinion: " Very likely the sovereign State, by legislative enactment, could abrogate such a contract for a definite term at a fixed rate, if the rate was unreasonable and the public interest required it; and in any event, by restricting the power of the municipality to deal with its property, or by establishing schedules of rates for such service and forbidding the collection of other rates. (*Louisville & Nashville R. R.* v. *Mottley,* 219 U. S. 467, 476; *Richmond County Gas-Light Co.* v. *Middletown,* 59 N. Y. 228; *People ex rel. Bridge Operating Co.* v. *Pub. Serv. Comm.,* 153 App. Div. 129.) Without abrogating the entire contract, the State in its sovereign capacity might regulate the rate of this public utility between the city and the plaintiff so that it would be reasonable; or the State might delegate such power to the municipality. (*People ex rel. Village of South Glens Falls* v. *Pub. Serv. Comm.,* 225 N. Y. 216, 225.) We are speaking

now of a simple rate agreed upon by contract for a term of years. *Where the agreement to furnish water was not only for the payment of a certain rate per year, but depended upon a further consideration of rights and easements granted by the property owner and accepted and their benefits utilized by the municipality, quite another question would be presented, and such an agreement ' may be a contract pure and simple, protected by the Constitution, both Federal and State, from subsequent abrogation.'* (*People ex rel. Village of South Glens Falls* v. *Pub. Serv. Comm., supra,* 221.) " (Italics mine.) To the same effect is the opinion in *Village of Long Beach* v. *Long Beach Power Co.,* 104 Misc. Rep. 337.

It seems to me that this lease is " a contract pure and simple, protected by the Constitution, both Federal and State, from subsequent abrogation."

It is impossible that this lease made in 1903, to grant to the lessee the right to drill for oil and gas, and to draw oil and gas from the demised premises, if found in paying quantities, was intended by the parties, in its inception, or has been used by them thereafter, to give a rebate on the gas received by the lessor thereunder, or to give the lessor any advantage over the plaintiff's customers or the public in general; such was not its purpose; such has not been its use.

One of the primary purposes for which the Public Service Commission Law was enacted was to protect the public from unfair practices and discrimination on the part of public service corporations. To make that law the instrument whereby a public service corporation does a patent injustice, and violates its contract while holding the other party thereto bound thereby, is contrary to the spirit of the statute.

The plaintiff's complaint should be dismissed and a judgment granted to defendant on his counterclaim.

Let findings be prepared and judgment entered accordingly.

Judgment accordingly.