(164 App. Div. 565)

BRADLEY v. VILLAGE OF UNION.   (No. 241-65.)

(Supreme Court, Appellate Division, Third Department.   November 25, 1914.)

1. MUNICIPAL CORPORATIONS (§ 1022*)—NOTICE.
   The notice required by Village Law (Consol. Laws, c. 64) § 341, as a condition precedent to an action for personal injuries, need not be given before suing a municipality for breach of contract.
   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2193; Dec. Dig. § 1022.*]

2. WATERS AND WATER COURSES (§ 201*)—PUBLIC SUPPLY—CONTRACTS—ACTIONS FOR BREACH.
   Where a municipality purchased the water plant of a private corporation, and thereafter began to distribute water for domestic purposes, it occupied exactly the same position as the corporation to whose rights and duties it succeeded, and a water user who contracted with the municipality for the furnishing of water may sue it for breach of contract.
   [Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 275; Dec. Dig. § 201.*]

3. APPEAL AND ERROR (§ 1033*)—REVIEW—HARMLESS ERROR.
   The submission to the jury of a question which the court should have declared in plaintiff's favor as a matter of law cannot be complained of by defendant.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4052–4062; Dec. Dig. § 1033.*]

4. WATERS AND WATER COURSES (§ 201*)—WATERWORKS—"MAIN"—"SERVICE PIPE."
   A one-inch pipe, connecting with a large water main and extending from within a municipality to a point outside, is a "main," where used to carry water to a number of persons residing outside of the municipality, as distinguished from a "service pipe," which merely takes water from the main to the individual user; and the water system having been acquired by the municipality from a private water company, the courts will not assume that it was without authority to maintain the small pipe, which it was using in a quasi public function.
   [Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 275; Dec. Dig. § 201.*
   For other definitions, see Words and Phrases, Second Series, Mains; Service Pipe.]

5. WATERS AND WATER COURSES (§ 201*)—PUBLIC SUPPLY—CONTRACTS—LIABILITY.
   Where a municipality, which acquired the property of a private water company, including a small pipe extending outside of the city limits and used to supply a few families, contracted with such persons to supply them with water, it was liable for breach of contract.
   [Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 275; Dec. Dig. § 201.*]

   Kellogg, J., dissenting.

Appeal from Broome County Court.

See, also, 150 N. Y. Supp. 112.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before SMITH, P. J., and KELLOGG, LYON, HOW-ARD, and WOODWARD, JJ.

Thomas A. MacClary of Union, for appellant.
La Verne E. Race, of Binghamton, for respondent.

WOODWARD, J. The plaintiff brought his action in justice's court in the village of Union to recover damages alleged to have been sustained by reason of a breach of contract on the part of the defendant in failing to supply the plaintiff with water. Briefly the facts in the case are these:

The village of Union in the year 1910 took the necessary steps to purchase the water plant theretofore maintained and operated by the Union Water Company, and the transaction was fully and lawfully consummated, so far as this record shows. Several years prior to this purchase by the defendant the Union Water Company had entered into a contract by the terms of which it supplied water to several families just outside of the corporate limits of the village of Union, in the town of Union. To accomplish this, the Union Water Company had extended its mains by adding several hundred feet of one-inch pipe to its four-inch main. A portion of the one-inch main was within the village limits and a portion of it outside, and the plaintiff purchased his property outside of the village limits from one of the parties who had thus been supplied with water through the Union Water Company's extended main. It is not disputed that the plaintiff, after his purchase, continued to be supplied with water from the Union Water Company, and afterward from the village of Union, and there is no question here that the village of Union purchased all of the property belonging to the Union Water Company; but the defendant contends that this one-inch extension of the four-inch main is a service pipe, and that it does not belong to the defendant to maintain and operate the same, or, at least, that it owed no such duty to the plaintiff outside of the village limits.

The plaintiff's particular causes of action grow out of the fact that in December, 1911, he paid to the defendant's agent the sum of $2.50, this being the prescribed rate for furnishing 7,500 gallons of water for the succeeding six months, with an obligation on the part of the plaintiff to pay 25 cents per 1,000 gallons for any water used in excess of said 7,500 gallons, and that the defendant failed to furnish the water for this particular six months, and that a similar transaction occurred in June, 1911, with like failure on the part of the defendant to perform. The plaintiff had judgment in the justice's court for $60. The defendant appealed for a new trial to the County Court. Upon the first trial in the County Court the plaintiff was nonsuited, but on the application of the plaintiff a new trial was granted, and upon the second trial the jury returned a verdict for $138.75 damages. Judgment was duly entered, and a motion for a new trial denied, and from the judgment and order denying the new trial appeal comes to this court.

[1] The defendant urges in its first point that the court erred in refusing to dismiss the complaint at the opening of the trial, on the ground that the action could not be maintained because the plaintiff

had failed to comply with the requirements of the Village Law in reference to notice, and particularly that he had not given the notice required by section 341 of said law. This section, without the eliminations and italics relied upon by the defendant, provides:

"No action shall be maintained against the village for damages for a personal injury or an injury to property alleged to have been sustained by reason of the negligence of the village or of any officer, agent or employé thereof. unless the same shall be commenced within one year after the cause of action therefor shall have accrued nor unless a written verified statement of the nature of the claim and of the time and place at which such injury is alleged to have been received shall have been filed with the village clerk within sixty days after the cause of action shall have accrued. An action on such a claim shall not be commenced until the expiration of thirty days after it is presented."

Obviously this statutory provision has no relation whatever to an action on contract, such as the plaintiff asserts, and the mere fact that the plaintiff in a justice's court action alleges generally in connection with his allegations of breach of contract, that he has "sustained damages to his property, was put to great expense for labor, and suffered great loss of time and hardship, to plaintiff's damage in the sum of $100," does not bring the case within either the letter or the spirit of the statute. The injuries contemplated by the statute are those arising out of negligent acts on the part of the village or its officers in relation to streets, highways, etc., by which physical injuries are worked to persons or property (Sammons v. City of Gloversville, 175 N. Y. 346, 350, 67 N. E. 622); and the effort to bring the present case within the provisions of this section of the Village Law is ingenious rather than commendable. The suggested application of subdivision 21 of section 89 of the Village Law requires no comment.

[2] Equally untenable is the second point, to the effect that the court erred in denying the motion at the close of plaintiff's case for a nonsuit, on the ground that the evidence showed no contract on the part of the defendant to furnish water for any particular period. The evidence established that the village of Union had purchased the plant of a private company, which had previously supplied water to the plaintiff's predecessor in title, and that the village of Union had continued to supply water; that the village of Union had adopted resolutions fixing the water rates at $5 per year where not to exceed 15,000 gallons of water was used, with an additional charge of 25 cents for each 1,000 gallons in excess of that amount, and that these rates were to be collected in advance for each period of six months. There was undisputed evidence that the plaintiff had paid the sum of $2.50 for each of two periods of six months, and there can be no reasonable question that there was an implied contract to supply the plaintiff with water for each of these six-months periods just as such a contract would have been held to exist with a private company. When a municipality takes to itself the plant of a private water company and undertakes to distribute water for domestic purposes, it occupies exactly the same position as the corporation to whose rights and duties it succeeded in it relations to those with whom it contracts (Oakes Mfg. Co. v. City of New York, 206 N. Y. 221, 228, 99 N. E. 540, 42 L. R. A. [N. S.] 286); and it would be absurd to contend that a private water

company, fixing its rates payable in advance, and receiving such payment, did not contract to furnish the water during the period for which the payment was made.

[**3, 4**] We are of the opinion that the defendant has no reason to complain because the court submitted to the jury the question of whether the extension of the four-inch main, by the addition of a one-inch pipe extending from within the village to a point outside of the same, was a main; for under the facts as they appear in evidence there can be no reasonable doubt that, as a matter of law, it was a part of the system constructed and maintained by the Union Water Company, and as such was one of the mains for distribution, as distinguished from a service pipe, which merely takes the water from the main to the individual consumer. Whatever might be said of the ruling of the court in reference to the duty of the defendant to keep this one-inch pipe in repair if it was a service pipe, it is clear that under the facts disclosed by the evidence this pipe constituted a part of the property which the village of Union took over from the Union Water Company, and the plaintiff had no authority whatever to disturb it in any manner, and this court will not assume to limit the control of a municipal corporation over the property which it has acquired from a private corporation discharging a quasi public function in an action of this character. It may be that it was not bound to maintain this one-inch pipe outside of the village of Union, even though it had the authority to do so under the provisions of section 232 of the Village Law; but, having contracted with the plaintiff to furnish him with water for stated periods, it could not violate these contracts without accepting the legal responsibility therefor any more than its predecessor, the Union Water Company, could have done.

We are of the opinion that the measure of damages adopted was the proper one (Whitehouse v. Staten Island Water Supply Co., 91 N. Y. Supp. 544, 101 App. Div. 112), and that no good reason is suggested why the judgment should not be affirmed.

The judgment and order appealed from should be affirmed, with costs.

Order affirmed, with $10 costs and disbursements. All concur, except

JOHN M. KELLOGG, J. (dissenting). In 1892 Brown and Smith, the owners of properties outside of the village of Union, made an agreement with the Union Water Company, a copartnership, by which the company was to extend an inch pipe from its main in the village to near their residences for the purpose of supplying the house of Brown and the premises of Smith with water, for which Brown was to pay annually for five years $23, and Smith $10, with the understanding that, if other premises beyond theirs were supplied through said pipe, the rate was to abate accordingly. The price fixed for the five years was intended to cover the cost of laying said pipe beyond the main and for the water used. The contract provided that they should be governed by the same rules and regulations of the company as governed the patrons that used said water within the corporate limits of the village, and that the said line was to be so laid as to provide said parties with a good and sufficient supply of water from its

present main in the same manner as is provided by said company to its patrons in the village.

In 1908 the village acquired and took over the water system, the transfer of title containing an assignment of the contract with Brown and Smith. The plaintiff has succeeded to the Brown farm, and he has been supplied with water to January, 1912. Upon purchasing the plant the village put the water system upon a meter basis; the water rates being $2.50 for each six months, with 25 cents additional for each 1,000 gallons in excess of 7,500. The plaintiff has paid those water rates from time to time, six months in advance, the last payment being June 20, 1912. In January, 1912, the water did not come to the plaintiff's house, and the pipe was found to be frozen and broken near the main. The plaintiff made complaint to the trustees and required that they thaw out and fix the pipe. They manifested a willingness to furnish the water, but doubted their right under the law to expend money for repairing the pipe outside of the village, and, the plaintiff neglecting to repair or fix the pipe, the defendant closed the connection at the main.

The plaintiff's contention was that he had a valid contract with the village by which it must furnish him with water and it must keep the pipe in repair. The defendant's contention was that it had not the power under the law to make the repairs outside of the village, and declined for that reason to repair and thaw out the pipe. Apparently the predecessors of the plaintiff had paid for the pipe beyond the village limits, and the plaintiff and his predecessors were under no legal obligation to receive and pay for the water after the contract term of five years. The owners, before the village acquired the plant, had the legal right to furnish water outside of the village, and by their contract undertook to do so for five years, which time had expired before the village acquired the plant; nevertheless the company continued to furnish water thereafter, we may assume, I think, at the same rate at which it furnished its patrons in the village, and the defendant after the purchase continued the service.

Section 227 of the Village Law provides that supply pipes connected with mains and used by private owners or occupants shall be laid and kept in repair at their expense, and section 232 provides that the water commissioners may sell to a corporation or to individuals outside of the village the right to make connections with the mains for the purpose of drawing water therefrom and fix the price and conditions thereof. If the village had constructed a new plant, instead of buying an existing plant, it would have had no authority to extend the pipe from its mains in the village beyond the village line and supply water to consumers outside the village. It could only permit the outsiders to take the water from the mains at the village line at their own expense.

While the village has the right to acquire a plant and existing water system, I think it is contemplated under section 232 that the plant shall be for the purpose of supplying the village and the residents of the village with water. I think in any event the contract was subject to the powers and limitations of the village when it acquired the plant.

The village authorities were well within their rights when they refused to expend money in thawing out and repairing the pipe outside of the village. The plaintiff, instead of thawing out and repairing the pipe himself, and thus obtaining a supply of water, has seen fit to litigate with the village upon technical grounds the question as to the duty of the village to make the repairs. Under all the circumstances, the plaintiff, if he desired water from the village plant, should have thawed out and repaired the pipe. Failing to do this, he cannot charge the village with liability on account of his not receiving the water from the plant.

I think, however, the plaintiff having paid water rates for a time when water was not furnished him, that he may recover the money so paid. I favor a reversal, unless the plaintiff stipulates to reduce the recovery of damages to $5, and to strike from the judgment the recovery of costs, in which case the judgment is so modified, and, as modified, affirmed, with costs to the appellant in both courts.