WILLIAM C. FITTS and Others, as Receivers of the NEW YORK STEAM COMPANY, Plaintiffs, *v.* WILLIAM T. ANDREWS, as Trustee of the Estate of S. H. ANDREWS, Defendant.

First Department, May 28, 1920.

Public service corporations — duty of steam company to make uniform rates — contract as to rates subject to duty to make uniform rates — right to increase rates as to customer holding contract for lower rate.

A contract between a steam company engaged in supplying steam to buildings in a city by which it agrees to supply steam to a user for a period of five years at a stated rate, being made by a public service corporation which is subject to the supervision of the Public Service Commission, must be deemed to have been made subject to the obligation of the company to furnish steam at uniform rates.

A steam company is without power to enter into a contract which would preclude it from making uniform rates.

A contract to furnish steam to a customer at a stated rate contains the implied condition that the company may change its rates to conform to the reasonable expense of furnishing the steam, and, therefore, the customer is bound by the new schedule of rates filed and approved by the Public Service Commission, notwithstanding the contract.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*David G. McConnell,* for the plaintiffs.

*Lawrence Godkin,* for the defendant.

SMITH, J.:

The New York Steam Company made a contract with the defendant's testator for the supply of steam to the building of the defendant's testator for a period of five years from October 1, 1916, at a rate therein specified. At this time the New York Steam Company, occupying the public streets, was placed under the supervision of the Public Service Commission. After the making of the contract, for some time, they filed new schedules which increased the rate payable by the defendant beyond the rate specified in the contract. The defendant refused to pay the increased rate. This controversy involves the right of the plaintiffs, as receivers of that steam company, to collect such increased rate, and the defendant claims that the filing of this increased rate impairs the obligations of their contract which the steam company was not authorized to do, and that the Legislature cannot give them power to so act as to impair the obligation of their contract. (See U. S. Const. art. 1, § 10, subd. 1.) If, however, at the time the contract was made this company was deemed by the Legislature to be a public service corporation and was accorded the rights of such a corporation to lay its pipes in the public streets, the contract must have been made in view of its powers and their obligations. One of those obligations was to furnish steam to all applicants at a uniform rate. If this contract rate must hold, then they are not furnishing steam at a uniform rate and the steam company was without power to make a contract which would preclude them from complying with the law to make a uniform rate. The schedule as filed is subject to the supervision of the Public Service Commission as to its fairness. (See Pub. Serv. Comm. Law, §§ 79, 80, subd. 10, as added by Laws of 1913, chap. 505.) It seems to me, therefore, that if this contract contained the implied condition that the company might change its rates to conform to the reasonable expense of the furnishing of the steam, the defendant is bound by the new schedule of rates filed and approved by the Public Service Commission, notwithstanding this contract, and that the plaintiffs have the right to recover.

In the case of *Armour Packing Co. v. United States* (209

U. S. 57) the Armour Packing Company claimed to be relieved from the public service schedule of rates by reason of a special contract, made as this was, in accordance with the published rates at the time that it was made. In that case the Supreme Court of the United States held that: " There is no provision in the Elkins Act* exempting special contracts from its operation, nor is there any provision for filing and publishing such contracts, and the.fact that a contract was at the published rate when made does not legalize it after the carrier has advanced the published rate. The provisions as to rates, being in force in a constitutional act of Congress when the contract is made, are read into the contract and become a part thereof, and the shipper, who is a party to such a contract, takes it subject to any change thereafter made in the rate to which he must conform or suffer the penalty fixed by law." That case would seem to be decisive of the case at bar.

In *Portland Railway Co.* v. *Oregon R. R. Commission* (229 U. S. 397) a similar rule was stated, and in the opinion it was stated: " The contract set up by which the fares from Lents were required to be not greater than five cents cannot be held to justify the discrimination, as such contracts must be taken to have been made in view of the continuing power of the State to control the transportation rates of common carriers subject to its jurisdiction." The same rule was held in *Philadelphia, B. & W. R. R.* v. *Schubert* (224 U. S. 613); in *Louisville & Nashville R. R.* v. *Mottley* (219 id. 467); in *Raymond Lumber Co.* v. *Raymond Light & Water Co.* (92 Wash. 330; 159 Pac. Rep. 133), and in *Union Dry Goods Co.* v. *Georgia Public Service Corporation* (248 U. S. 372). (See, also, *Postal Telegraph-Cable Co.* v. *Associated Press*, 228 N. Y. 370.)

Judgment should be directed for plaintiff, with costs.

CLARKE, P. J., DOWLING, MERRELL and GREENBAUM, JJ., concur.

Judgment ordered for plaintiff, with costs. Settle order on notice.

---

* See 32 U. S. Stat. at Large, 847, chap. 708.— [REP.