CITY OF NEW YORK, Appellant-Respondent, *v.* PENNSYLVANIA RAILROAD COMPANY, Respondent-Appellant.

First Department, November 25, 1952.

*Milton H. Harris* of counsel (*Harry E. O'Donnell* and *Reuben Levy* with him on the brief; *Denis M. Hurley, Corporation Counsel,* attorney), for appellant-respondent.

*William J. O'Shea* of counsel (*John Godfrey Saxe, Henry J. Kennedy* and *John A. Kiser* with him on the brief; *Saxe, Bacon, O'Shea & Bryan,* attorneys), for respondent-appellant.

COHN, J. The City of New York instituted this action against Pennsylvania Railroad to recover a balance of $518,703.51, allegedly due as rent for the use of piers numbered 27, 28 and 29, North River, together with land under water between the piers and certain lateral platforms with sheds erected upon the land under water, for the period beginning July 1, 1944, and ending October 31, 1948.

Two causes of action are pleaded. The first is for reformation of written permits, thirty-two in number, issued by the city to railroad during the stated period covering the use of the piers. It is claimed that through mutual mistake or mistake

on its part and fraud on the part of railroad, the permits provided for an annual rental of $263,168.43 instead of an intended rental of $382,638.47.

The second cause of action is based upon the reasonable value of the use and occupation of the land under water between the piers and the improvements thereon which, it is asserted, was not covered by the permits.

The answer sets up the defense of the Statute of Frauds as to the first cause of action and payment as to the second. Following service by the city of a bill of particulars, railroad moved for judgment on the pleadings dismissing the first cause of action under rule 112 of the Rules of Civil Practice and for summary judgment dismissing the second cause of action under rule 113. The city moved to strike an affirmative defense of the Statute of Frauds interposed by railroad to the first cause of action. From an order of the Special Term granting railroad's motion to dismiss the first cause of action the city appeals, and from a denial of railroad's motion for summary judgment dismissing the second cause of action, railroad appeals.

Before 1927, railroad for many years had occupied piers 27, 28 and 29 North River under long term leases. In that year, it requested permission from the city to extend the piers laterally by building platforms on piles between piers 27 and 28 and between piers 28 and 29. So as to afford greater accommodations for the handling of perishable foodstuffs, these were to be erected over land under water almost entirely occupied by railroad under its then permit. The piers together with the extensions were to constitute the produce terminal of railroad. Permission for the construction work was granted. In approving the plans for the proposed extensions, the then commissioner of docks pointed out that since the improvement would take in additional land under water north of pier 29, an additional rental of $1,900 a year would be charged. Thereafter the proposed extensions were constructed at a cost to railroad of $1,400,000. They were completed in 1928, and the city became the owner.

In support of its cause of action for reformation the city asserts that pursuant to an oral agreement made in 1934 railroad was permitted to recoup the cost of the improvements by not charging the latter for the use and occupation of the improvements over a sixteen-year period, i.e., from July 1, 1928, through June 30, 1944. It claims that through mutual mistake or by mistake on its part and fraud on the part of

railroad, the annual and monthly permits issued between July 1, 1944, and October 31, 1948, failed to include rental charges for the improvements and omitted from the description of the demised premises the lateral extensions built on the land under water.

The city concedes that the permits in suit may not be reformed so as to conform to any oral agreement made in 1934. If such relief were sought the Statute of Frauds would be a complete defense to the action (*Friedman & Co.* v. *Newman,* 255 N. Y. 340). It maintains, however, that the action is rather one to reform the individual permits themselves, as original documents, so as to have them reflect the true, although unexpressed, intention of the parties at the time each permit was issued.

Under the provisions of the New York City Charter, the commissioner of the department of marine and aviation has exclusive charge and control, except as otherwise provided in the Charter or by statute, of wharf property owned by the city. He is authorized to issue temporary permits for the use of wharf property, terminable at will and for a period not to exceed one year (New York City Charter, §§ 701, 704, 707, subd. b). Each of the thirty-two permits which the city seeks to reform was issued by the commissioner under the seal of his department and in accordance with law.

To warrant reformation of the permits so issued a certainty of error must be established by proof of the clearest and most convincing character (*International Photo Rec. Mach.* v. *Microstat Corp.,* 269 App. Div. 485). It must appear that the minds of the parties met in a contract and in the mistake through which it failed of expression and that such mistake was either mutual or induced by fraud of defendant (*Curtis* v. *Albee,* 167 N. Y. 360, 364). In short, the remedy of reformation is available only when necessary " to correct mistakes by writing out the contract according to the actual agreement ". (*Thomas* v. *Harmon,* 122 N. Y. 84, 90.)

Considering the record in the light most favorable to the city it appears that in 1934 it was agreed that no charge would be made for railroad's use of the improvements for a sixteen-year period ending June 30, 1944. Although the agreement as set forth in the city's bill of particulars does not indicate what was to take place at the end of that time, it may reasonably be inferred that a rental charge for the use of the improvements could thereafter be exacted. However, there is nothing to indicate the existence of any agreement providing for an

increased rental after the expiration of the sixteen-year period.

The city contends that at the time each of the thirty-two permits in suit was issued and accepted it was the unexpressed intention of the parties that the charges it now seeks to impose upon defendant were to be incorporated in the permits. To be sure, the city may have intended to increase the rent on and after July 1, 1944, but that intention admittedly was unexpressed and there is nothing to show that such intention was known to defendant or that defendant had any intention of paying a higher rental. The fact that defendant had benefited by the 1934 agreement in no way obligated it to remain in possession at an increased rental after the sixteen-year period had expired. The most that may be said for the city's position is that defendant knew that the city could or might charge an increased rental after June 30, 1944. In the absence of at least a declared intention on the part of the city to exact the higher rental it now seeks, defendant may not be held answerable on the theory that it had agreed to such a rental when it had no knowledge of it whatever at the time the permits were issued. It appears therefore that the city is not seeking to reform the permits so as to correct some error whereby an underlying agreement was not accurately stated, but rather to have the court make thirty-two new agreements entirely at variance with those actually made, signed and performed by the parties. Equity will not make a new agreement for the parties under color of reforming the one made by them (*Amend* v. *Hurley*, 293 N. Y. 587, 595; *Porter* v. *Commercial Cas. Ins. Co.*, 292 N. Y. 176, 183).

Accordingly the first cause of action was properly dismissed.

As we sustain the order of the Special Term dismissing the city's first cause of action, it becomes unnecessary to consider the order denying the motion to strike out the defense of the Statute of Frauds.

As to the second cause of action, the city claims that it is entitled to the reasonable value of the use and occupation of the lateral extensions built on the land under water because they were not included in the permits issued to railroad between 1944 and 1948. However, the documentary evidence in this case establishes that the permits definitely embraced those extensions. Each permit issued since 1928 and up to 1948 included the right to use the piers and extensions, as authorized by the commissioner of docks in 1927. In 1935 the commissioner of docks, in a letter enclosing a renewal permit, clearly

indicated that the lateral extensions were included, as did a letter also written in 1935 by the department of marine and aviation to the comptroller of the city. The occupancy permits issued by the city after February 16, 1927, and including the thirty-two issued for the period in controversy make specific reference to the " platform construction authorized by our permit of February 16, 1927." The permits which constitute the agreements between the parties, all in identical language, license and permit railroad to use and occupy:

" All that certain public wharf property, situated on the North River, in the Borough of Manhattan, City of New York, County of New York and known and described as follows, to wit: Pier 27, 28, 29 *as extended* together with the bulkhead extending from the southerly line of Pier 27 to a point 20′ north of the northerly line of Pier 29, *together with the structures erected thereon,* together with 15,948 sq. ft. of l. u. w., northerly of Pier 29, N. R., Manhattan, for platform construction authorized by our permit of February 16, 1927.

" Together with the right to enter upon the said wharf property for the purposes of this license or permit." (Emphasis supplied.)

When read with the letter of February 16, 1927, to which they expressly refer, these agreements, prepared by the city and accepted by railroad permitted the latter to use and occupy the lateral extensions which are described in that letter. Those improvements obviously form an integral part of the produce terminal of the railroad.

The proof is undisputed, too, that before the extensions were erected, the railroad was required to insure the premises for $533,400, but after the construction of the lateral extensions, and down to the year 1948, the insurance requirement stated in every permit issued, in order to embrace the $1,400,000 improvement, was fixed at $1,800,000. This shows that it was the city's intention that the permits should embrace the entire produce terminal and not merely part of it.

In its complaint, the city demanded payment for the use and occupation of the land under water as well as the improvements thereon. The city now takes the position that while the permits authorized the use by railroad of the land under water over which the lateral extensions were constructed, they did not authorize the use and occupation of the lateral extensions built thereon. That contention seems to be wholly without merit. Unless railroad had the right to occupy the lateral extensions

which were constructed with the city's consent, its right to use the land under water beneath such extensions, which the city now concedes was demised by the permits, would be meaningless.

It should also be noted that all the permits issued were revocable at the pleasure of the commissioner of docks. If there had been a mistake or fraud, or even a misunderstanding, the commissioner at any time could have revoked the permit or any of its successive renewals after 1944. This he did not do.

Defendant should not now be forced to pay an additional rent not required under the permits, especially since they included the lateral extensions. Had the city expressed its intention of charging an increased rental for the use of the improvements built on land under water, defendant may very well have refused to accept the renewal permits. All the agreements have been fully executed, and we find that the rentals reserved thereunder have been fully paid.

As defendant has established by documentary evidence its defense of payment, and its claim that it occupied the entire premises under permits duly issued by the city, it is entitled to summary judgment dismissing the second cause of action.

The order should be modified by reversing so much thereof as denies railroad's motion for summary judgment dismissing the second cause of action and by granting that motion, and as so modified, the order should be affirmed, with $20 costs and disbursements to defendant. The appeal from the order denying the motion to strike out the defense of Statute of Frauds to the first cause of action should be dismissed.

CALLAHAN, VAN VOORHIS and BREITEL, JJ., concur.

Order unanimously modified, accordingly, etc. Settle order on notice.