TONAWANDA BOARD AND PAPER COMPANY, Respondent, *v.* CITY OF TONAWANDA, Appellant.

Fourth Department, November 23, 1921.

Municipal corporations — village of Tonawanda had authority under Village Law to contract to furnish water for use of factory for period of twenty years — city of Tonawanda which succeeded village has right under charter to modify contract rate to meet changed conditions — burden of proof on city to establish right to change contract rate — city must propose or establish just and reasonable rate — motion to vacate temporary injunction restraining city from interfering with contract denied — facts too important to be decided on moving papers — laches of city in applying to court for relief and its long acquiescence in restraining order may constitute ground for denying its motion to vacate injunction.

The village of Tonawanda had the implied authority under the Village Law as it existed in 1902 to enter into a written agreement to supply a large quantity of water daily for a term of twenty years, to be used by a factory to be located in the village, in consideration of a flat rate per year, and also of easements granted to the village through the lands occupied by the factory.

The delegation of power in the charter of the city of Tonawanda, which succeeded the village, is sufficient to permit the city to modify the aforesaid contract rate to meet changed conditions at present standards of cost of production, it appearing that the rate agreed upon is not just and reasonable under the circumstances; but such power may not be exercised capriciously or arbitrarily.

In the absence of legislation expressly fixing a rate and of a statute requiring a hearing before an existing rate is changed, the city must be able to

justify its claim that a contract rate should be changed because it is unjust, unreasonable or discriminatory, and must propose or establish a rate that is just and reasonable in its place.

The discretion of the court in granting an injunction *pendente lite* restraining the city from violating or abrogating the contract after it had been in effect for eighteen years will not be overruled and the injunction vacated; the questions of fact involved are too important to be decided on the moving papers of the city.

*It seems*, that the laches of the city in applying to the courts for relief and its long acquiescence in the restraining order constitute an additional ground for declining to vacate the temporary injunction order.

Hubbs and Clark, JJ., dissent, with memorandum.

Appeal by the defendant, City of Tonawanda, from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Erie on the 17th day of August, 1921, denying defendant's motion for an order vacating a temporary injunction order enjoining and restraining the defendant from cutting off the water and service thereof from the plaintiff and taking or removing the water mains and pipes then installed for service in conveying water to the property of the plaintiff and from violating or abrogating an agreement between the defendant and the plaintiff's assignors to furnish water at its paper mill.

*Roland Baxter* [*Norman D. Fish* of counsel], for the appellant.

*Kenefick, Cooke, Mitchell & Bass* [*Thomas R. Wheeler* of counsel], for the respondent.

Davis, J.:

The granting of the order of injunction *pendente lite* and the denial of a motion to vacate it were, to a large extent, discretionary. Particularly is this true where it is sought to abrogate a contract in effect for eighteen years. The questions of fact are too important to decide on the affidavits, pleadings and exhibits presented at Special Term, for the legal questions will turn largely on fundamental facts now in dispute. No sufficient reason is, therefore, presented in the moving papers of the defendant why we should overrule that discretion.

Lest it be thought that we have followed the path of least resistance in deciding the appeal, and have avoided considering the important questions sought to be raised on the motion and

which eventually must be determined on a trial, and that the issues may be more clearly presented and considered on the trial that must follow, we have deemed it advisable to enter into some discussion of the principles involved in the controversy between the parties.

The facts may be briefly stated as follows: On the 7th of July, 1902, the village of Tonawanda (the predecessor of the present city), through its municipal board and president, entered into a written agreement with two individuals, whereby the village agreed to supply to the second parties 1,500,000 gallons of water per day, to be used by the factory to be located in the village for the manufacture of paper and paper board, for a term of twenty years, at a flat rate of $250 per year, payable semi-annually. In addition, the second parties (besides making some agreements not now in force or that seem to be merely formal and unimportant) granted to the village a perpetual right of way across their premises for its water mains, with the right of access thereto to repair and maintain the same, or to repair and maintain any additional lines necessary for the operation of its water works system; and a right of way across and under the surface of their premises to construct and maintain a line of sewer for the purpose of reaching a sewage outlet into the Niagara river, and to repay the village all costs and expenses of the construction and expense of maintenance of such sewer and sewage outlet for twenty years. By its terms this contract was assignable, and it was shortly thereafter assigned to the plaintiff. This contract remained in force without dispute until the month of March, 1920, when the common council adopted a resolution reciting that the contract was invalid, and that the city was selling water to the plaintiff at less than the cost of pumping and delivering the same, and declaring that the city would cease furnishing water after April 30, 1920, to the plaintiff under the contract, and providing for notice thereof to be given.

It was shortly thereafter that the defendant obtained the temporary injunction order. The principal questions raised on the appeal are: (1) Had the village of Tonawanda the right to make the contract? (2) If it had such right, may the city as its successor be relieved of its duty to perform according

to the terms of the contract, in whole or in part, because it is unprofitable?

The Village Law (Laws of 1897, chap. 414, being General Laws, chap. 21) in force at the time the contract was made, gave, in section 88, subdivision 1, the board of trustees the management and control of the property of the village; and by subdivision 16 the right to establish, regulate and repair public reservoirs, aqueducts, pumps, wells, fountains and watering and drinking places. By section 220 the board of water commissioners might contract with an individual or corporation for supplying water to the village for extinguishing fires or other public purposes, but such contract should not be for a longer period than five years, and at a limited expense. By section 221 a proposition might be submitted at the village election for the establishment of a system of water works for supplying the village and its inhabitants with water, or for the acquisition of an existing private system. By section 224 a system of water works acquired or established should be under the control and supervision of the board of water commissioners. Section 229 provided: " The board of water commissioners shall establish a scale of rents for the use of water, to be called ' water rents,' and to be paid at such times as the board may prescribe." By section 232 the board was given power to sell to corporations or individuals outside the village the right to make connections with its mains for the purpose of drawing water therefrom, and to fix the prices; and by section 234 (as amd. by Laws of 1899, chap. 82) to contract with other municipalities to furnish them water, but such contract should not be for a longer period than ten years. By sections 66 and 67 a municipal board might be established, possessing all the powers of two or more boards provided for in the Village Law. Evidently such a board was established by the defendant with general powers. Under the provisions of this law the village established and operated a water system.

The claim of the appellant's counsel is that the municipal board had no authority to make any contract whatever, but was limited to establishing a scale of rents which it might collect.

We do not take that view of it. The statute did not attempt to define in detail all the powers and rights conferred.

It left many to be implied from the general grant of power. When the village built its system and invited consumers to make connections with its mains and established a rate for water to be consumed, which the consumer was obligated to pay, that offer, when acted upon, constituted a contract. It was, of course, silent as to how long the village would maintain the rate, and on the part of the consumer how long he would continue to take. In granting to a municipality the power to construct, own and maintain a water works system of its own, for which it may make rates, the Legislature must have had in mind, as would the municipality in accepting the power, the probable necessity and the chances of financial success of the project. The establishment of rates to be profitable to a private corporation or a municipality operating a water works system must depend upon two elements: (1) The amount of water to be consumed; and (2) the time during which the consumption is to be continued. Without these elements there could be no certainty originally as to the wisdom of the expenditure or investment.

The municipality may well afford, as do private companies, to establish a scale of rates so that those who take large quantities may obtain the same at a comparatively smaller rate. Such rates are reasonable. (*Silkman* v. *Water Commissioners,* 152 N. Y. 327.) It is also important that the consumption be continuous, and a higher rate may well be charged to those who agree to take but for a limited term. Of course, a large number of the customers will be property owners, who will be small or moderate but steady users, and to whom rates fluctuating to the cost of delivery will apply. But in undertaking a business enterprise of this character, we can see no reason why a municipality may not take into consideration in establishing rates and making contracts, the classes who use large quantities steadily, and those who will use a large or small quantity for a short time only. Evidently this is what the village did, for the record indicates that it made similar contracts for a long term with other large consumers. The statute limited the time for which a municipality could contract with a private corporation to furnish water to it for fire and other public purposes to a period of five years, and the period of contract to furnish water to other municipalities

to ten years; but there was no express limitation on the time for which it might agree to furnish water to its inhabitants. In the absence of statutory limitation, we cannot say that a contract to supply a large amount of water to a consumer at a reasonable and non-discriminatory rate for a period of twenty years would be *per se* invalid. It may not have been wise but it was not necessarily illegal. It is not on its face an *ultra vires* contract which disables the village from performing its functions and duties in respect to the management of its water works; nor does it indicate the exercise of a power beyond those expressly granted or implied by its charter. (*Walla Walla* v. *Walla Walla Water Co.*, 172 U. S. 1; *Omaha Water Co.* v. *City of Omaha*, 147 Fed. Rep. 1; appeal dismissed, 207 U. S. 584; *Gushee* v. *City of New York*, 42 App. Div. 37; *Drew* v. *Village of White Plains*, 157 id. 394; *Los Angeles* v. *Los Angeles City Water Co.*, 177 U. S. 558; 28 Cyc. 655.) Whether the contract is an inviolable one must depend on the particular facts developed on the trial. (*Home Telephone Co.* v. *Los Angeles*, 211 U. S. 265; *Eastern Illinois State Normal School* v. *City of Charleston*, 271 Ill. 602.)

The authority of the municipal board of the village to enter into and perform contracts is to be implied from the broad powers granted by the statute permitting the construction or acquisition of a water works system, the making of rates and engaging in business in the same manner as a private corporation might. (*Ketchum* v. *City of Buffalo*, 14 N. Y. 356; *Messenger* v. *City of Buffalo*, 21 id. 196; *City of New York* v. *Delli Paoli*, 202 id. 18; *Gushee* v. *City of New York*, *supra*; *Bradley* v. *Village of Union*, 164 App. Div. 565, 569; affd., 221 N. Y. 591.)

The second question presents greater difficulties. By chapter 22 of the Laws of 1903 the city of Tonawanda was incorporated to succeed the village. The board of public works, which succeeded the municipal board in control of the water works system, was given power from time to time to modify, increase or diminish the rates. (Tit. 21, § 20.) These provisions were subsequently re-enacted in the revised city charter, except that after 1917 such power was given to the common council. (Laws of 1905, chap. 357, tit. 20, § 20, as renum. § 18 and amd. by Laws of 1917, chap. 793.)

The city claims that it is losing large sums of money in furnishing water to the plaintiff under the contract. It, therefore, proposes to use this rate-making power to abrogate the contract entirely. If the contract as originally made is valid, it cannot be so abrogated.

Very likely the sovereign State, by legislative enactment, could abrogate such a contract for a definite term at a fixed rate, if the rate was unreasonable and the public interest required it; and in any event, by restricting the power of the municipality to deal with its property, or by establishing schedules of rates for such service and forbidding the collection of other rates. (*Louisville & Nashville R. R.* v. *Mottley,* 219 U. S. 467, 476; *Richmond County Gas-Light Co.* v. *Middletown,* 59 N. Y. 228; *People ex rel. Bridge Operating Co.* v. *Pub. Serv. Comm.,* 153 App. Div. 129.) Without abrogating the entire contract, the State in its sovereign capacity might regulate the rate of this public utility between the city and the plaintiff so that it would be reasonable; or the State might delegate such power to the municipality. (*People ex rel. Village of South Glens Falls* v. *Pub. Serv. Comm.,* 225 N. Y. 216, 225.) We are speaking now of a simple rate agreed upon by contract for a term of years. Where the agreement to furnish water was not only for the payment of a certain rate per year, but depended upon a further consideration of rights and easements granted by the property owner and accepted, and their benefits utilized by the municipality, quite another question would be presented, and such an agreement " may be a contract pure and simple, protected by the Constitution, both Federal and State, from subsequent abrogation." (*People ex rel. Village of South Glens Falls* v. *Pub. Serv. Comm., supra,* 221.)

The contract rate would seem, taken by itself, to be ridiculously inadequate. The defendant says the rights and easements are of no value. The plaintiff denies it. The additional consideration may have been real or fictitious. The municipality may have received a positive benefit in acquiring and retaining these easements, or they may have been inserted in the contract solely for the purpose of having an apparently valuable consideration, though actually worthless, to give validity to a contract otherwise illegal and unenforcible because of inadequacy of consideration and the

fundamental unreasonable or discriminatory character of the rate. Those are issues which must be decided upon a trial by the production of proper and sufficient proof.

The Legislature has not yet elected to regulate the rates of water to customers, as it has regulated the rates of other public utilities. (Public Service Comm. Law [Consol. Laws, chap. 48; Laws of 1910, chap. 480], as amd.) We think the delegation of power in the charter sufficient to permit the city to change the contract rate to meet changed conditions and present standards of cost of production. The power to increase, establish and regulate rates is a governmental function. The village acted in an administrative capacity as a private corporation would act in making the contract. (*Gushee* v. *City of New York, supra.*) It did not by making the contract surrender its governmental power to regulate the rates. (*Home Telephone Co.* v. *Los Angeles, supra.*)

The statute delegating power to the municipality to regulate the rate was a part of the contract between the parties, and the contract contained the implied condition that the rate might be changed to conform to the reasonable expense of furnishing water. (*Fitts* v. *Andrews,* 192 App. Div. 160; *Town of North Hempstead* v. *Pub. Serv. Corp.,* 231 N. Y. 447.) That power may be exercised when it appears that the rate agreed upon is not just and reasonable under the circumstances; but it may not be exercised capriciously or arbitrarily. Upon the municipality is cast the burden of proving its right to change the contract rate. In the absence of legislation expressly fixing a rate and of a statute requiring a hearing before an existing rate is changed, the city must be able to justify its claim that the contract rate should be changed because it is unjust, unreasonable or discriminatory, and must propose or establish a rate that is just and reasonable in its place. As we have already said, these facts, as well as the fact as to what actual consideration the municipality has received or is now receiving, in addition to the stipulated rate, by the property, rights and easements it obtained under the contract, must be established by proof on the trial, and cannot, we repeat, be determined on the inconclusive statements contained in affidavits read on a motion.

The original injunction order was granted April 30, 1920.

Just why in the intervening time between the granting of that order and the appeal to this court, these issues we have attempted to define, if they were so important to the city, have not been determined on a trial, we are not advised. We might well hold that the laches of the defendant in applying to the courts for relief, and its long acquiescence in the order restraining it, would be an additional ground for declining to vacate the temporary injunction order.

For the reasons stated the order must be affirmed, with costs.

All concur, except HUBBS and CLARK, JJ., who dissent in a memorandum by HUBBS, J.

HUBBS, J. (dissenting):

I am unable to concur in the opinion by Mr. Justice DAVIS. The fundamental question is whether or not a municipal corporation which derives its authority from sections 228 and 229 of the General Village Law of 1897 can make a valid binding contract for twenty years with a private corporation fixing a definite annual rental for the use of 1,500,000 gallons of water per day. These sections authorize the board of water commissioners "to establish a scale of rents for the use of water, to be called 'water rents.'" They do not in terms permit the making of a contract for a definite, fixed, annual rental for a term of years. If the statute in question in express terms authorized such a contract it probably would be valid but such authority cannot be implied but must be granted in express terms. Such a contract deprives a municipality of its power during the term to fix and regulate water rents and constitutes a surrender of the power of government to that extent. Such a contract should not be permitted unless the authority to enter into it has been clearly delegated by the Legislature. (*Eastern Illinois State Normal School* v. *City of Charleston*, 271 Ill. 602; 111 N. E. Rep. 573; L. R. A. 1916D, 991; *Home Telephone Co.* v. *Los Angeles*, 211 U. S. 265; 53 Law. Ed. 176.)

I vote, therefore, to reverse the order and to vacate the injunction, with costs.

CLARK, J., concurs.

Order affirmed, with ten dollars costs and disbursements.