Felix J. Aulisi, J.
This is an action to recover the sum of $12,112.75, being the balance due to plaintiff for water furnished by plaintiff to defendant’s water tank at St. Johnsville, N. Y., during the period October 10, 1934 to June 1, 1948. The issues in this action were tried without a jury and findings o'f fact and conclusions of law were waived.
Some time in 1929 the defendant applied to plaintiff for the latter to supply water to its water tank at St. Johnsville, N. Y., for use by its locomotives. On July 5, 1929 the Village Board passed a resolution accepting the application and on October 10,1929 said board again accepted said application and authorized and directed the president of said board to enter into a written contract with the defendant.
Said resolutions fixed the rate for the water supplied to the water tank at $.04 per 100 cubic feet up to 140,000 and $.03 for all water used over this amount, the readings to be made quarterly, and set no limit as to time upon the furnishing of water at the said fixed rates. This was less than the plaintiff’s published schedule of water rates. A written contract was drawn by the plaintiff’s attorney and executed on behalf of the plaintiff by the president of the Board of Water Commissioners. This contract embodied the terms as set forth in said resolutions and also provided that it was to commence on October 10, 1929 and continue for a period of five years. It was forwarded to the defendant but the latter never executed said contract and failed to return it to the plaintiff. Nonetheless, in accordance with said resolutions and proposed written contract, the plaintiff supplied water to the defendant’s water tank and defendant paid for said water at the rates provided therein, and when the defendant consumed less than 1,703,333 cubic feet of water in any quarter it paid a minimum rate of *266 $525 per quarter. During the above-said period from September 12,1929 to J une 1,1948 the defendant was the largest commercial consumer of plaintiff’s water.
At the time of the passage of said resolutions, plaintiff’s commercial rate for water was upon a sliding scale per quarter of $108.50 for the first 100,000 cubic feet and $.04 per 100 cubic feet for all water consumed in excess of 100,000 cubic feet. For many years prior to 1929 and since then, the plaintiff also supplied water to defendant’s passenger and freight stations at St. J ohnsville and said water was paid for by defendant at plaintiff’s published rates from time to time.
On May 13,1932 plaintiff’s Village Board adopted a resolution amending, modifying and increasing the rates for water consumption then in force and effect. The resolution, which was to take effect on June 1, 1932, provided for a sliding scale of $118.50 for the first 100,000 cubic feet of water consumed per quarter and $.04 per 100 cubic feet of water consumed in excess of 100,000 cubic feet per quarter.
Except for some correspondence had between the parties in December, 1934 and January and February, 1935 the defendant had no notification of the increase in the water rates pursuant to the May 13, 1932 resolution until September 1, 1948 when defendant was billed for the quarter preceding the latter date at the increased rates. The $12,112.75 which the plaintiff seeks to recover in this action represents the difference between the amount the defendant paid for the water supplied to its water tank for the period from October 10, 1934 to June 1, 1948 and the amount defendant should have paid for said water for the same period pursuant to the rates established by the May 13, 1932 resolution.
It is contended by the plaintiff that the defendant had notice of the increase in rates brought about by the May 13, 1932 resolution; that said resolution was effective as to all consumers and that the defendant was not excepted from its operation, and upon the termination date of the written contract, October 10, 1934 the defendant became chargeable for the water furnished on the basis of the rates established by said resolution.
The defendant contends that it had agreed with the plaintiff in 1929 upon the rates to be charged for the water to be supplied to the water tank; that it paid in full for said water at the rates established by the agreement; and that it had no notice that the increased rates effected the defendant until September 1, 1948, when it was billed for the first time on the basis of the 1932 resolution.
*267 As I see it the only question to be determined here is whether the resolution of 1932, changing the published schedule of rates for water consumption in plaintiff’s village, in and by itself constituted a change of rates to which the defendant should have conformed. After giving due consideration to the stipulated facts, exhibits, and other proof, I am of the opinion that the plaintiff is bound by the July 5, 1929 resolution and cannot prevail in this action.
There is no question that the plaintiff had the power and right to make a contract with the defendant to supply the latter with water at rates which they may agree upon (Village Law, §§ 221-224, 229), and that a municipality may establish rates for water by contract which might be lower than the rates charged other consumers (Tonawanda Bd. & Paper Co. v. City of Tonawanda, 198 App. Div. 760). It is a sound business principle of general application in contracts and charges relating to electric lights, gas, private water companies and the like to charge a lower rate to those who use large quantities than to those who consume a less amount. Under this statute the question o'f consumption was one of the elements to be considered in determining the rates. Surely it can not be said to be unreasonable to provide less rates where a large amount of water is used than where a small quantity is consumed (Silkman v. Water Comrs., 152 N. Y. 327).
I am of the opinion that a valid agreement was entered into between the parties at the lower rates adopted by the resolution of July 5,1929. Both parties carried out their respective parts of the contract by laying the necessary pipe lines and by the plaintiff furnishing the water to the water tank and the defendant paying the amount billed for said water.
There is nothing in the May 13, 1932 resolution that would make it appear that the plaintiff intended to abrogate the rate preference given to defendant by the 1929 resolution. Neither can such intention be drawn from inference, especially in the light of the fact that 'for a period of 16 years following the adoption of the 1932 resolution, the plaintiff billed the defendant on the basis of the preferential rates and accepted payment on that basis, while at the same time billing defendant at the regularly scheduled rates for water delivered to the defendant’s freight and passenger stations.
Notice of the increase to effect the rates on water furnished to defendant’s water tanks was never given to the defendant, and on the question of intention it appears to me that because of the January 9, 1935 letter, the plaintiff must have regarded the lower rates as still being in effect.
*268 In the absence of a declared intention to increase the rates the plaintiff can not hold defendant chargeable on the basis of increased rates when defendant had no knowledge of such intention when the water was delivered (City of New York v. Pennsylvamia R. R. Co., 281 App. Div. 27, affd. 305 N. Y. 788).
In view of all the circumstances in this case, I believe that there was a duty on the plaintiff to give defendant some notice of its intention to terminate the agreement. I find that none was given and therefore must rule in favor of the defendant.
Judgment accordingly.