Town Board of the Town of Poughkeepsie et al., Appellants, v. City of Poughkeepsie, Respondent.

Second Department, December 21, 1964.

*James R. Brown, Jr.,* for appellants.

*Gaius C. Bolin, Jr.,* for respondent.

CHRIST, J. The plaintiff Town Board of the Town of Pough-keepsie sues on behalf of the named water districts which it administers. There are no Water Commissioners (Town Law, § 190). The Town of Poughkeepsie itself is also named as a plaintiff.

For many years the defendant, the City of Poughkeepsie, has been selling and delivering water to some of the town water districts outside the city's territorial boundaries; and, in turn, the districts have been reselling the water to local district con-sumers. For the water so sold up to July 1, 1961, the city's charges were in accordance with rates fixed by it in 1919. Those

rates have been relied on by the water districts in fixing their resale price.

On June 5, 1961 the Common Council of the city adopted a resolution increasing the city's rates, effective July 1, 1961. This action was taken without prior notice to the Town Board of the Town of Poughkeepsie and to the water districts.

Because of the lack of such prior notice, the plaintiffs claim to be aggrieved for two reasons: (1) they lost the opportunity to be heard with respect to the propriety and validity of the increase; and (2) in making up their own budgets and in fixing the district water rates, they were not able to pass the increase on to the local consumers. Plaintiffs also allege discrimination in favor of certain other customers of the city. The city's water charges to each water district, under both the old and the new rates, were and are based on the quantities of water delivered to the respective districts, as determined by master meters.

In this action the Town Board and the town seek a declaratory judgment that the resolution increasing the rates is discriminatory, unlawful, and unconstitutional, in that it deprives plaintiffs of property without due process of law.

A municipality may sell water outside its boundaries, if authorized to do so by statute (*Simson* v. *Parker,* 190 N. Y. 19; see, also, *Western N. Y. Water Co.* v. *City of Buffalo,* 124 Misc. 257, affd. 213 App. Div. 458, revd. on other grounds 242 N. Y. 202; 1962 Atty. Gen. 191–193). The defendant was given such power. Its charter, as originally enacted (L. 1896, ch. 425), authorized the defendant to grant permits for use of its water (§ 103, subd. 10) and to '' establish a scale of annual rates * * * for water furnished for the ordinary uses thereof for dwellings * * * according to the number of families or occupants and consumption of water, as near as may be practicable '' and additional '' special rates '' for '' buildings, establishments and trades which consume extra quantities of water '' (§ 119). By subsequent amendment (L. 1910, ch. 632), the power was enlarged to permit the furnishing of water beyond the city's territorial limits (§ 28, subd. 29), and the provision as to the fixing of rates (§ 119) was changed to read, as it still does: (1) that the scale of rates shall be '' uniform '', (2) that the rates may be adjusted to the amount of water used, '' but not less than the cost thereof,'' for which purpose the quantity shall be determined by meters, and (3) that '' Extra rates may be charged for all water furnished outside of the city.''

It is further provided by statute that a municipality which operates a '' water public utility service may earn from and

out of such operation an amount equivalent to taxes which the said service, if privately owned, would pay to such municipal corporation; and, in addition * * * a fair return on the value of the property used and useful in such public utility service " (General Municipal Law, § 94).

The rates must be reasonable (*Silkman* v. *Board of Water Comrs.*, 152 N. Y. 327, 332; *Johnson-Kahn Co.* v. *Thompson*, 73 Misc. 103, 111). The concept of charging different rates to different consumers, such as sanctioned in the above-mentioned charter provisions, viz., on the basis of the amount of water used, is not improper. This is not to say that the right thus to discriminate is without circumscription. Variances in rates must have a " rational basis and not be purely arbitrary " and must be " fair and equal " to similarly situated properties, that is, " there must be uniformity *within the class* " (*Weiskopf* v. *City of Saratoga Springs*, 244 App. Div. 417, 421, 422, revd. on other grounds 269 N. Y. 634, citing *City of Rochester* v. *Rochester Gas & Elec. Corp.*, 233 N. Y. 39, 48; *Silkman* v. *Board of Water Comrs., supra*). Rates may also vary according to differences in cost of delivery. Such variance in rates is permissible even if enabling legislation is general and does not specifically authorize a variance; the right is deemed included (*Tonawanda Bd. & Paper Co.* v. *City of Tonawanda*, 198 App. Div. 760). We note, in passing, that it has been held that the jurisdiction of the Public Service Commission with respect to approving or fixing water rates of a water-works public utility (Public Service Law, art. 4-B) does not extend to water rates of a municipally owned or operated water supply system (2 Op. St. Comp., 1946, pp. 376–377).

The arrangements under which water was furnished by the city to the water districts were not formal. Respective applications to the city were made from time to time for a supply of water and, in pursuance thereof, the Common Council of the city adopted resolutions to sell. No proof was adduced as to the specific contents of the applications or of the resolutions, but it is not claimed that any specific rates were mentioned therein.

As between the city and most of the water districts involved in this action, the arrangements were made many years prior to 1961 when the city's rates were increased. As to some of the districts, however, the arrangements were made thereafter either because those districts were not yet in existence or for some other reason. But, in view of the determination being made herein, the dates of the respective rate arrangements become academic.

The water charge here is not a tax, for in this case "the charge made depends solely upon the quantity of water used" and the water is deemed to have been the subject of "a voluntary purchase", even though "as security for the payment of the debt a lien is imposed on the property itself for any unpaid charge" (*New York Univ.* v. *American Book Co.,* 197 N. Y. 294, 297). The arrangements here do not include an express price specification. Nevertheless, the transactions are contractual. In the absence of more specific terms, the arrangements are deemed contracts under which the purchasers agree to "pay the prices established" by the municipal supplier (*Brass* v. *Rathbone,* 153 N. Y. 435, 441).

There is in this case a question of fact as to whether notice of the increase of rates was actually sent by the city to the plaintiff Town Board prior to the effective date of the increase. The city adduced evidence that some days before July 1, 1961 it had sent to the Town Board a copy of the resolution increasing the rates. The plaintiffs adduced evidence that the Town Board received no notice of the increase until sometime in October, 1961, when it received bills charging the new higher rates. Although this issue also need not be resolved in view of the determination being made herein, we note in this connection that the plaintiffs further proved that a few months after the effective date of the city's new rates, that is, in October, 1961 when, according to the plaintiffs, the plaintiff Town Board received notice of the higher rate billing, the water consumers in these districts were still being charged rates based on the city's former rates.

The resolution in question fixed specific charges per 100 cubic feet of water, with a graduated downward scale of the unit charge for classified large quarter-annual consumption, but the rates were greater for "outside the city" consumption than for "inside the city" consumption. The rates for the former were fixed at twice those for the latter. This ratio was not new. It had obtained before the change in 1961. The rates had not theretofore been increased since 1919 and, as a result of the 1961 change, they jumped about 75% greater than the previous rates. The resolution indicated that, in view of the cost of constructing a new water works and of improving distribution facilities, and in view of the increased cost of producing water, the rates had to be raised so as not to violate the City Charter (§ 119) which requires that the charges shall be not less than the cost of furnishing the water. In addition, the resolution provided that certain "outside the city" consumers were to

be given preferred rates. Two of them were specifically named. Vassar College and St. Francis Hospital were to be charged the "inside the city" rates. All "outside the city" industrial consumers using more than 100,000 cubic feet per quarter year were also to be charged those rates, plus one third.

Apart from these preferences, the plaintiffs adduced no proof from which it could be found that the new rates were unreasonable. As a matter of fact, plaintiffs' attorney conceded at the trial that these rates were reasonable, stating that plaintiffs' only complaints were: (1) that the plaintiff town had not been given notice and an opportunity to be heard, and (2) that the above-mentioned preferential rates constituted improper discrimination.

Unlike the charter provisions in the *Weiskopf* case (244 App. Div. 417, revd. on other grounds 269 N. Y. 634, *supra*), neither the Charter of the City of Poughkeepsie nor the provisions of any other statute made it part of the city's rate-fixing procedure that purchasers of water should be given notice and an opportunity to be heard. The charter provisions enabling the city to establish water rates are not rendered invalid because of the absence of such a requirement (*Silkman* v. *Board of Water Comrs.*, 152 N. Y. 327, 331, *supra*; *Tonawanda Bd. & Paper Co.* v. *City of Tonawanda*, 198 App. Div. 760, 767, *supra*). The case of *Village of St. Johnsville* v. *New York Cent. R. R. Co.* (3 Misc 2d 264) is not to the contrary. The decision in that case turned on a distinguishable factual situation. It was found that the rate increase there involved, though generally applicable, was not intended to affect the specific contract before the court.

Purchasers are presumed to have knowledge of the fact that the rates may lawfully be changed without notice and without an opportunity to be heard. They contract to purchase water according to the quantity consumed by them and to pay the prevailing rates in existence during the period of consumption. Hence, we conclude that plaintiffs' contentions based on the absence of notice and opportunity to be heard were correctly rejected by the trial court.

Plaintiffs' objection to the preferential rate given to industrial consumers of large quantities of water outside the city is without merit. It is not unjust discrimination for a water-selling municipality to prescribe, in accordance with an enabling statute, lower rates for consumers who fall within a definite category of large quantity consumers (*Silkman* v. *Board of Water Comrs.*, 152 N. Y. 327, 329, 332, *supra*; *Tonawanda Bd. & Paper Co.*

v. *City of Tonawanda,* 198 App. Div. 760, *supra; Village of St. Johnsville* v. *New York Cent. R. R. Co.,* 3 Misc 2d 264, 267, *supra*).

An entirely different question is presented by the preferential rates accorded to Vassar College and St. Francis Hospital. There is no statute authorizing the granting of a preferential water rate to a hospital or to a college, as there is, for instance, in the case of such an institution's exemption from real property taxes (Real Property Tax Law, § 420; see N. Y. Const., art. XVI, § 1). The State Comptroller has rendered two opinions that, in the absence of any such statutory authority, a village may not furnish water at special rates either to religious, patriotic or educational institutions (5 Op. St. Comp., 1949, p. 64), or to a nonprofit hospital where the rate " is not predicated on an increase in usage of water " (12 Op. St. Comp., 1956, pp. 146, 147).

In any event, neither a water district nor any other water consumer may refuse to pay a water bill because a preferential rate has been given to other purchasers (*State ex rel. Ferguson* v. *Birmingham Waterworks Co.,* 164 Ala. 586; *Paris Mountain Water Co.* v. *Camperdown Mills,* 98 S. C. 304). Assuming *arguendo* that in an appropriate proceeding the plaintiffs would be entitled to an adjudication that the rates to the two institutions above named are improper, no such adjudication should be made in this case, if only because those institutions are not parties to this action (*Wood* v. *City of Salamanca,* 289 N. Y. 279, 282–283; *Manhattan Stor. & Warehouse Co.* v. *Movers Assn.,* 289 N. Y. 82, 88).

If a municipality selling water is to be required to give advance notice of an intention to raise its water rates, the imposition of such a requirement is a legislative and not a judicial responsibility.

It is our conclusion that plaintiffs were not entitled to a declaration in their favor as to any of the issues. Nevertheless, they are correct in their contention that the complaint should not have been dismissed and that the judgment should have set forth a declaration of the rights and other legal relations of the parties (CPLR 3001; former Civ. Prac. Act, § 473), even though plaintiffs were not entitled to the specific declaration sought by them (*Lanza* v. *Wagner,* 11 N Y 2d 317, 334, app. dsmd. 371 U. S. 74).

We determine that the order directing judgment dismissing the complaint on the merits and the judgment thereafter entered dismissing the complaint should be reversed on the law and the facts, without costs; and that judgment (without costs) should

be entered which shall contain the following two decretal paragraphs: (1) a paragraph declaring that the fact that plaintiffs were not given notice and an opportunity to be heard with respect to the adoption in June 1961, by the Common Council of the defendant City of Poughkeepsie, of the resolution establishing a new schedule of water rates, effective as of July 1, 1961; and the further fact that the resolution accorded preferential rates to industrial consumers outside the City of Poughkeepsie using in excess of 100,000 cubic feet of water per quarter year, did not render the resolution invalid or unconstitutional; and (2) a paragraph declaring that, as to all the water purchased and delivered on and after July 1, 1961 to the water districts on whose behalf this action was prosecuted, the plaintiff Town Board of the Town of Poughkeepsie is obligated to pay the defendant city therefor at the increased rates specified in said resolution.

Findings of fact contained or implicit in the decision of the Trial Term which may be inconsistent with this opinion should be reversed, and new findings made as indicated herein.

UGHETTA, Acting P. J., KLEINFELD, HILL and RABIN, JJ., concur.

Judgment and order reversed on the law and the facts, without costs, and judgment directed to be entered (without costs) which shall contain the following two decretal paragraphs: (1) a paragraph declaring that the fact that plaintiffs were not given notice and opportunity to be heard with respect to the adoption in June, 1961, by the Common Council of the defendant City of Poughkeepsie, of the resolution establishing a new schedule of water rates, effective as of July 1, 1961; and the further fact that the resolution accorded preferential rates to industrial consumers outside the City of Poughkeepsie using in excess of 100,000 cubic feet of water per quarter year, did not render the resolution invalid or unconstitutional; and (2) a paragraph declaring that, as to all the water purchased and delivered on and after July 1, 1961 to the water districts on whose behalf this action was prosecuted, the plaintiff Town Board of the Town of Poughkeepsie is obligated to pay the defendant city therefor at the increased rates specified in said resolution. The findings of fact implicit or contained in the decision opinion of the Trial Term which may be inconsistent herewith are reversed, and new findings made as indicated in the opinion herewith.