Frederick B. Bryant, J.
The plaintiffs bring this action for a declaratory judgment seeking a determination that they are entitled to receive water and sewer service from the defendant, City of Ithaca. The complaint sets forth four alleged grounds for the relief sought:
First, that the plaintiffs are the beneficiaries of the standard contract for water services between the City of Ithaca and the Town of Ithaca on behalf of the East Ithaca Water District and are entitled to service under the binding terms of that contract; second, that the city’s denial of such services is arbitrary *618 and discriminatory; third, that the city is guilty of laches with respect to its presently asserted policy of limiting extension of water service to the detriment of these plaintiffs; and fourth, that the city failed to give notice of discontinuance of service as required by contract.
The plaintiffs now move for summary judgment for the relief demanded in their complaint, asserting that the contracts themselves spell out the obligation of the defendant city. They argue that the contractual obligation of the defendant is absolute and not subject to modification,' and forecloses the defendant from refusing to extend services to these plaintiffs under any conditions.
The defendant has generally denied the allegations of the complaint and asserts that its refusal to extend water and sewer service to the plaintiffs is authorized by the provisions of the standard water contract itself and by law.
The East Ithaca Water District was established by the Town of Ithaca in 1948. In 1949 application was made to the State Water Power and Control Commission and approval obtained from that body for the acquisition of a water supply for the district. By three successive contracts (Dec. 31, 1948, Jan. 1, 1965 and Oct. 8, 1969) between the Town of Ithaca and the City of Ithaca, the latter agreed to furnish water to the district. The Ellis Hollow Road Sewer District was established by the town in 1965 and was approved by the defendant’s Board of Public Works for immediate connection to the city sewer system.
The plaintiffs’ property is located within the water and sewer district mentioned above. In 1968, 25 acres of the property were rezoned from single-family residential to business use and the other 13 acres from single-family residential to multiple residence. Trunk sewer lines were laid in the sewer district and additional water mains were installed in the water district including those intended for service to plaintiffs’ premises. Plaintiffs are assessed $1,200 yearly for the sewer lines and $900 for the water lines. The plaintiffs plan to erect a 258-apartment building, a shopping center and one or more gasoline stations on the property in question.
The defendant has denied water and sewer services to the plaintiffs. Its refusal is based on an alleged shortage of water. The defendant asserts that it cannot supply water to the plaintiffs without endangering the supply available for its own municipal service and for service to city residents. Refusal of sewer service is moot in this case since the city has assured plaintiffs that it will allow sewer connections if the plaintiffs provide a supply of water to carry off the sewage in compliance *619 with the Board of Health regulations. But the city’s refusal of water service also affects the sewer service and such refusal has brought on the present action.
The plaintiffs contend that they have an absolute contractual right to water service. They allege that their contemplated use would not exceed the amount that would be needed if single-family homes were erected on the acreage involved. They insist that even if there is an actual water shortage or danger thereof that the defendant is still obligated by its contract to give them water service now, and, if necessary later because of shortage of supply, curtail service to all outside water districts alike and without discrimination.
The defendant in its refusal to extend its water service to plaintiffs relies on the wording and the legal implications of two clauses in the standard water contract, as follows:
“ 4. Additional Services, beyond those now in use, shall be permitted only within the water district as now constituted subject to the provisions of Section 5-41 of the Ithaca City Charter and paragraph 10 of this agreement.
“ 10. The City agrees that it will furnish water from the same potable water supply as that used within the City. This contract shall in all respects be deemed subject to the following provisions of Section 142 of the Ithaca City Charter: 1 The board (of public works) shall not sell or permit the use of water under this section if or when thereby the supply or pressure for the City or any of its inhabitants will be insufficient. ’ And the City shall not be liable for any act done by it in pursuance of the provisions of such section. In the event of any water shortage that may be reasonable (sic) anticipated by the City, the City agrees to notify the Town promptly of such anticipated shortage to the end that the Town may have a reasonable time to procure an alternate source of supply, and until such alternate source may be procured by the Town, the City agrees to exercise reasonable diligence in continuing an adequate supply of water. ’ ’
Section 142 of the Ithaca City Charter now appears as section 5-41 of such charter. Section 5-41, enacted by chapter 503 of the Laws of 1908 (as amd. by L. 1932, ch. 465) contains the following additional wording: ‘ ‘ and may discontinue or terminate such sale or use at any time. ’ ’ Section 232 of the Village Law contains similar language with respect to prohibiting sale of water if the supply for the village or its inhabitants will be insufficient.
The provisions of the standard water contract with reference to terminating water services outside the city must be interpreted with reference to the limited powers of a municipality to contract for the sale of its excess water. The water supply *620 of the defendant has been acquired and developed by the defendant in its governmental capacity for the benefit of its residents. Section 5-42 of the Ithaca City Charter and sections 118 and 118-a of the General Municipal Law have extended the right of the city to sell to outside consumers its excess water beyond the needs of the municipality and its residents. But it has necessarily limited this right by section 5-41 of the City Charter which permits the city to discontinue such service when its own municipal requirements and the requirements of city residents become endangered.
The case of Simson v. Parker (190 N. Y. 19) clearly expresses the principle that a city must retain such power to discontinue water service and that it cannot contract for the sale of water to consumers outside its boundaries on terms which give such outside consumer an irrevocable right to water in disregard of the primary rights of the municipality and its residents. Indeed, the court stated that even if a statute permitted a municipality to so contract, it would be unconstitutional. This Avas likewise the holding in Matter of Penn-York Lanes v. Village of Waverly (26 Misc 2d 150,151) Avhere the court stated: “ Not only is there no obligation upon a board to sell water outside a village, but there is a duty upon a board not to sell water outside a village ‘ if thereby the supply for the village or its inhabitants Avill be insufficient.’ (Village Law, § 232).”
Citing Oakes Mfg. Co. v. City of New York (206 N. Y. 221) as authority, the plaintiffs argue that when the city contracted to supply water to outside districts it put itself in the water supply business and thus became subject to the same rules as govern any business corporation. But the Oakes case concerned itself with the obligation of the city to provide water to its own inhabitants — an activity of a proprietary nature in contrast to the governmental function of supplying fire protection service. The plaintiffs’ argument ignores the rule that the city by law is prohibited from engaging in the sort of business enterprise the plaintiffs refer to. Sale of surplus water outside the city boundaries is an activity expressly legalized by statute and subject to the ever present limitation that the rights and interests of city inhabitants come first.
It therefore appears that the right to discontinue the supply of water to consumers living outside the municipal boundaries is and must be a rather broad one. Paragraph 10 of the standard water contract recognizes this. Even though the city agrees to give notice to the outside water district of a prospective shortage in order to enable such district to find another source of supply, it goes no further than to agree to use ‘ ‘ reasonable *621 diligence ’ ’ in continuing the supply until such alternate source is procured.
Granted this broad power it must necessarily be held in this case that the plaintiffs do not have an absolute contractual right' to receive water from the city. The defendant city, through its Board of Public Works, having determined that the water supply would be endangered by a further extension to these plaintiffs within the Bast Ithaca Water District not only has no obligation to furnish water to them but has, in fact, a duty not to so extend such facilities.
Plaintiffs emphasize the fact that the situation here is to be distinguished from other instances of denial of service to outside consumers because a contract for such services exists between the city and the town. It may well be that a contract of that nature places some limitation on a municipality’s exercise of absolute discretion and prohibits an arbitrary discontinuance of water service to outlying areas. But such a contract cannot impose an obligation on the municipality which is outside the municipality’s power to fulfill.
The plaintiffs further assert that the defendant city in the instant case is acting in an arbitrary manner and is guilty of laches in permitting the town to lay water mains and then refusing service to such mains. They also allege a breach of the contract by failure to give the notice required by the standard water contract.
In the court’s opinion, the city is subject to much criticism for its failure to establish and promulgate any clear cut and positive statements of policy with reference to the extension of its water services. A study of the various resolutions, policy declarations and the like recorded in the minutes of the several meetings of the Board of Public Works indicates that these declarations have raised more questions than they have answered. Both parties to the present motion have referred to these minutes in their briefs, each placing a different interpretation on the words and substance of the recorded proceedings as they affect one side of the controversy or the other. This uncertainty as to the city’s policy with respect to supplying water outside its boundaries has undoubtedly lulled the town and its residents into a feeling that there was no end to the source of supply. Now, like the proverbial camel who got its nose in the tent, the outside water districts may feel that they have an unalterable and unalienable right to continuing water service equally with the city and its residents. Unfortunately such is not the case.
*622 Furthermore, the minutes of the several meetings of the Board of Public Works indicate that the continuing extension of water service to outlying districts has been a matter of concern for some time. The problem of future supply has been discussed on numerous occasions and on several of these occasions representatives of the Town of Ithaca have been present and have taken part in consideration of the problem. Thus there must have been some awareness on the part of the town that a time would come when the city would refuse any further extension of service.
The refusal of the city to extend its water services any further into outlying areas is based in part on an engineering study made under the auspices of the New York State Department of Health. While this report only predicts a possible shortage in the future it does not seem to the court to be unreasonable or arbitrary for the city to look to the future of its water supply before committing itself to an extension of service which may later cause trouble for itself and those residents of outlying areas presently dependent on the city source. In this respect the city has broad discretionary powers to act for the protection of its inhabitants. (Matter of Toan v. Village of Perry, 297 N. Y. 710 ; Garvar v. City of New York, 54 Misc 2d 562.) It may be that, as the plaintiffs assert, there is in fact sufficient water for all and that the defendant is acting in an arbitrary manner in now refusing service. Such a contention calls into question the good faith of the defendant and the extent to which good faith alone is an answer to a charge of arbitrariness. Such a contention also necessarily involves the matter of laches.
It is impossible for the court to say that the city is not acting in good faith in making its determination not to extend its water facilities further. Even a present declaration that good faith was lacking would not help the plaintiffs in the future when other factual grounds for refusal of service might be raised. .It is the court’s opinion that in the exercise of its discretion it should refuse to entertain this action for declaratory judgment beyond the declaration of contract rights previously discussed.
The court makes no comment upon, nor is it a matter of concern to it at this time, whether the town or any of its residents may have a cause of action for damages based on breach of the city’s contract for water services to the East Ithaca Water District or payment of water and sewer assessments made in reliance on representations made by city officials. (See Zang v. *623 City of Kingston, 29 A D 2d 813 and Bradley v. Village of Union, 164 App. Div. 565.)
Plaintiffs also complain that notice of discontinuance of supply was not given as required by the contract. It would appear that the contract provision calling for notice of the city’s intention to discontinue service because of danger to its own supply, coupled with its agreement to use reasonable diligence to continue the supply until a new source can be found, was intended as a protection to outside consumers using and depending on the city source. But there would be no point in requiring notice in the present case. The plaintiffs are not as yet consumers of city water. The city has said that they cannot have city water because of danger to the city supply. The city should not be required to grant water now and then serve notice of its intention to discontinue such service. The plaintiffs would not be justified in proceeding with building plans under such circumstances. The court is therefore of the opinion that the failure to give notice of an intention to refuse further extension is not a breach of the contract under the circumstances here.
The foregoing decision disposes of all the issues raised by the complaint. The court considers that the complaint insofar as it seeks a declaratory judgment is insufficient as a matter of law on the contract issues; it declines as a matter of discretion to pass judgment upon the other issues raised and therefore directs that the action be dismissed.