Joseph F. Gagliardi, J.
The within CPLR article 78 proceeding presents several interesting and, in certain respects, novel questions regarding the propriety of a municipal water tap-in charge. Petitioner moves for an order annulling respondent’s determination that petitioner must pay a prescribed fee to tap into the village water system. In case law, agency rulings, and by statute, the tap-in fee has also been called a "connection fee”, an "entrance fee”, a "privilege fee” and "service charge” to distinguish it from other municipal water charges.
The property involved herein is subdivision property located within the corporate limits of the village. Pursuant to section 44-8 of the village code, pertaining to water rules and regulations, "no taps shall be made * * * unless a permit to do so is first obtained * * * and a fee in accordance” with section 44-9 is paid. Section 44-9, as amended August 14, 1973, sets forth a schedule of tap-in fee rates within the village corporate limits. The rate varies according to the size of the tap, which, in this case, is 10 inches and requires a $15,000 payment per tap.
Petitioner asserts that respondent has demanded a tapping charge of $30,000 to allow petitioner to reconnect a new 10-inch waterline that it installed. Respondent, in its brief, has conceded that only one tap is involved and, therefore, has modified its position to request a $15,000 fee for the water connection.
*704 Virtually all relevant facts are uncontroverted and may be set forth briefly. In June or July, 1974 petitioner purchased certain subdivision property[1] upon which a map had been filed and accepted a year earlier. Petitioner agreed inter alia to abide by respondent’s lawful regulations, secure necessary permits, and replace an existing village waterline (originally installed in 1895). Petitioner has replaced the waterline but has not yet tapped into the village water system. At all relevant times, petitioner was aware of respondent’s water tap-in charge. Subsequent to the approval of the subdivision map, respondent imposed a moratorium on future tap-ins until its water supply capacity was improved to meet present and future needs of the municipality. On June 4,1974, respondent authorized a bond issue in the sum of $1,840,000 for the purpose of financing the reconstruction of its water system.
Petitioner asserts the following contentions: the tap-in charge is unauthorized and is, in reality, a tax which the village has not properly promulgated; if the charge can be imposed, it is disproportionate to the cost and constitutes a denial of due process; and finally, the charge does not apply to a mere relocation of an existing water pipeline. Respondent, in turn, argues that the tap-in fee is not a tax; is properly imposed in an attempt to recoup a small part of its water bond expenditure; the fee applies to all tap-ins, including relocations; and that petitioner is estopped to challenge the charge since, it agreed, expressly or impliedly, to pay same.
Prior to discussing these contentions it is necessary to determine the nature of this proceeding. In reality, the court is being asked to review the fixing of a municipal service charge, which is a legislative act, ordinarily not reviewable in a CPLR article 78 proceeding (Matter of Lakeland Water Dist. v Onondaga County Water Auth., 24 NY2d 400; Town Bd. of Town of Poughkeepsie v City of Poughkeepsie, 22 AD2d 270). However, since all necessary parties are before the court, the proceeding may continue as an action for a declaratory judgment (CPLR 103, subd [c]; Matter of Lakeland Water Dist. v Onondaga County Water Auth., supra).
Petitioner’s first contention, that the tap-in charge is unauthorized and constitutes a tax by analogy to water rent cases, is without merit (see, passim, 6 Warren’s Weed, New York *705 Real Property, Water, §§ 9.01-9.09). Water rent charges not predicated upon consumption have been deemed a form of taxation which cannot be imposed in the absence of statutory authorization and adherence to certain fundamental tax procedural requisites (cf. State Univ. of N. Y. v Patterson, 42 AD2d 328; Town Bd. of Town of Poughkeepsie v City of Poughkeepsie, supra; see Matter of Buff v Board of Trustees, 5 NY2d 602). However, the tap-in charge is a one-time fee wholly unrelated to consumption or the imposition of proper water rents. As such, respondent has been granted statutory authority to exact a fee for tap-ins (Village Law, §§ 11-1112, 11-1114; see Town Law, § 198, subd 3, par [a]). Pursuant to the relevant provisions, respondent may "adopt such uniform service charges” (Village Law, § 11-1114) as are necessary, and condition connection to its mains upon reasonable "rules and regulations” (Village Law, § 11-1112, subd 1). Thus, a tap-in fee is a "service charge” and, in any event, it is immaterial if labeled as a tax, since direct statutory authority to impose same is granted.
Petitioner’s next contention, that the fee is unjust, requires elaboration. Strong presumptions of constitutionality attach to respondent’s legislative fee resolution (Matter of Rosenthal v Hartnett, 36 NY2d 269), particularly since it is presumed that respondent investigated the need for such legislation (ibid.). The burden is upon the taxpayer-property-owner to prove that the fee is disproportionate (Henry B. Byors & Sons v Board of Water Comrs., 358 Mass 354; 94 CJS, Waters, § 289, subd a) and many factors enter into consideration, with cost not necessarily the sole guidepost (94 CJS, Waters, § 289, subd c).
Municipalities, including villages, have a duty to assure that their residents have an adequate water supply (Village Law, § 7-704; 94 CJS, Waters, §§ 242, 278; cf. Kennilworth Mgt. Co. v City of Ithaca, 63 Misc 2d 617; see Ann., 48 ALR2d 1222, Municipal Water Systems-Extensions). Residents of a municipality cannot be denied access to the municipal water system where an adequate supply exists (cf. Matter of Toan v Village of Perry, 297 NY 710; Matter of Peer-A-Mid Bldrs. v Coulter, 27 Misc 2d 660). However, moratoriums may be imposed and permits refused where municipal services are inadequate and a comprehensive plan exists to remedy the situation (Matter of Golden v Planning Bd. of Town of Ramapo, 30 NY2d 359, app dsmd 409 US 1003; Matter of Belle Harbor Realty Corp. v Kerr, 43 AD2d 727; Matter of Muscillo v Town Bd. of Town of *706 Oyster Bay, 28 Misc 2d 79; see 2 Anderson, New York Zoning Law and Practice [2d ed], § 19.19). Furthermore, while the rule may have been different at common law (Matter of Lake Secor Development Co. v Ruge, 141 Misc 913 [Close, J.], affd 235 App Div 627), municipalities are empowered to condition approval of plat plans upon installation of water mains (Village Law, § 7-730, subd 1; Town Law, § 277, subd 1; Matter of Se-Frank Developers v Gibson, 5 AD2d 687; see Public Health Law, §§ 1115-1119; Maloco Realty Corp. v Town of Brookhaven Planning Bd., 34 AD2d 999).
Municipalities have the right to charge for use of their water and may fix water rents therefor (94 CJS, Waters, §§ 285, 286, subd b). Of course, the tap-in fee, as any other municipal charge, like water rents, must be commensurate with the service supplied, enforcement, and maintenance thereof (Town of North Hempstead v Colonial Sand and Stone Co., 14 Misc 2d 727; Adlerstein v City of New York, 11 Misc 2d 754, affd 7 AD2d 717, affd 6 NY2d 740; Strahan v City of Aurora, 38 Ohio Misc 37; Englewood Hills v Village of Englewood, 140 Ohio App 2d 195; Henry B. Byors & Sons v Board of Water Comrs., 358 Mass 354, supra; Johnston, Constitutionality of Subdivision Control Exactions: The Quest For A Rationale, 52 Corn LQ 871.) "Municipalities may provide for tap-in charges for water subject only to the qualification that the fees established must be fair and reasonable and bear a substantial relationship to the cost involved in providing the service to the landowner” (12 McQuillan, Municipal Corporations [3d ed], § 35.37, p 480). As indicated earlier, the word "cost” is to be interpreted broadly and has been so construed by sister-State jurisdictions, which shall be discussed infra.
At bar, it is clear that the fee for connection into the village water system is applicable to all potential users of the system, newly eligible and present subscribers, who seek a tap-in permit. Therefore, there is no classification problem nor is petitioner being discriminated against (Town Bd. of Town of Poughkeepsie v City of Poughkeepsie, 22 AD2d 270, supra; see S. S. & O. Corp. v Township of Bernards Sewerage Auth., 62 NJ 369; Opn No. 69-408, 25 Opns St Compt, 1969, p 199).[2]
*707 Nevertheless, in this context petitioner returns to its initial argument that the fee is an unlawful tax in the guise of a municipal charge which is to be used as a means of financing an improved water system. The argument is unpersuasive, especially since it has already been determined that whatever the classification, respondent can lawfully impose a "service charge”. Yet petitioner contends that the fee is too high and the motive for fixing it at a high plateau is improper.
The issue narrows down to whether a municipality may properly fix a tap-in fee for the purpose of maintaining and improving its water system pursuant to a schedule of fees adopted in connection with a comprehensive plan to finance improvements.[3] There is virtually no New York case law in point although an opinion by the State Comptroller appears to sanction an "entrance fee” insofar as newly eligible users are concerned where no formal improvement district has been created (25 Opns St Compt, 1969, p 199, supra).
One reported decision in this State, by way of dictum, supports respondent’s position that a municipality may levy a charge for related construction service to finance other necessary municipal services (Stanco v Souzzi, 11 Misc 2d 784 [$500 building permit fee to finance sewer system]).[4] I am in accord with the views expressed by Mr. Justice Pittoni in the cited case that a municipality may attempt to stabilize its tax rates and impose upon the developer a small part of the burden of financing needed municipal services, by creation of authorized municipal charges.
Section 94 of the General Municipal Law provides that a municipality that operates a water system may earn a fair return thereon, including profits; and profits may be used for municipal purposes. Article IX (§ 1, subd [f]) of the State *708 Constitution provides that municipalities may earn a "fair return” on the operation of a water utility service "over and above costs of operation and maintenance and necessary and proper reserves”. Various provisions of the Village Law (e.g., §§ 4-412, subd 1, 7-704; cf. § 4-414) require respondent to conserve adequate supplies of water for the protection of the safety, health, comfort and general welfare of its inhabitants. In enacting regulations along these lines, respondent is lawfully exercising the police power and its acts rest upon a secure foundation (James v Valtlierra, 402 US 137; People ex rel. Durham Realty Corp. v La Fetra, 230 NY 429, 450, dsmd 257 US 665). Respondent has broad discretionary powers to act in preserving the welfare of its inhabitants (Kennilworth Mgt. Co. v City of Ithaca, 63 Misc 2d 617); and the issue, therefore, is not only whether the tap-in charge is authorized as a "service charge” vis-á-vis a tax dressed in obfuscatory verbiage, but rather, whether respondent has properly exercised the police power. In this respect the court is not entirely without guidelines, since similar issues have been litigated in other jurisdictions.
In Seltzer v Sterling Twp. (371 Mich 214) a "privilege fee” for connection to the municipal water system in the sum of $8,400 ($150 per lot in the subdivision) was upheld, although the property owner also had to pay a tap-in fee of $125 per lot plus water rents based on usage (also, see, R & C Robertson v Township of Avon, 28 Mich App 305). In Starline Constr. Co. v City of Swartz Creek (54 Mich App 538) the court sustained a sewer tap-in fee in the amount of $500 per home where the evidence established that part of said fee was to be used for improvement of the sewer system. Similarly, in Home Bldrs. Assn. of Greater Salt Lake v Provo City (28 Utah 402) a $100 sewer tap-in fee per living unit was upheld to insure improvement in the municipal system.
The cited cases, of course, were decided upon construction of diverse legislation extant in their own jurisdictions. Nonetheless, the broad rationale of those cases, as recently expressed by our Court of Appeals (Matter of Golden v Planning Bd. of Town of Ramapo, 30 NY2d 359, supra), to the effect that municipalities should do all that is necessary to secure adequate facilities for their inhabitants, must apply here. It is common knowledge that Orange County is presently enjoying a tremendous growth in population, which increased approximately 20% during the decade recently past, with an addi *709 tional expected growth of approximately 15% upon the close of this year. Indeed, during the period 1960-1970 respondent’s population had increased by approximately 34%. To require present taxpayers to finance municipal improvements that will benefit new homeowners, without permitting the municipality recoupment of reasonable charges therefor, is inconceivable.
The maxim salus populi supreme lex (the welfare of the people is the highest law) is singularly applicable (Matter of Wulfsohn v Burden, 241 NY 288, 298-299). Respondent’s fee scheme appears rational in its attempt to spread the burden of supplying municipal services and in its attempt to recoup a minimal portion of its approved financing for an improved water system. This procedure is sound economics and consonant with the Village Law and State Constitution. The fee provisions do not constitute invidious discrimination, do not violate any fundamental constitutional right, and amount to an economic regulation which respondent is authorized to promulgate and which is reasonable and bears a rational relationship to a permissive legislative objective (Village of Belle Terre v Borass, 416 US 1). Consequently, the court holds that respondent has authority to fix a tap-in fee for the express purposes set forth above as statutorily authorized and in the lawful exercise of the police power.
Nonetheless, a factual issue is raised concerning the amount of the fee in relation to the cost of supplying water to the subdivision, maintaining existing and prospective mains, and insuring an adequate water supply for estimated growth needs. An additional factual issue is raised by respondent regarding its contention that petitioner expressly or impliedly consented to pay the tap-in fee by virtue of its prior knowledge of same and its failure to raise the question in its continued negotiations with the village (see Silkman v Water Comrs., 152 NY 327, 331; Henry B. Byors & Sons v Board of Water Comrs., 358 Mass 354, supra; S. S. & O. Corp. v Township of Bernards Sewerage Auth., 62 NJ 369, supra; Woodside Homes v Town of Morristown, 26 NJ 529). It should be noted that petitioner’s president is a knowledgeable participant in construction and development contracts. Thus, this "is not a case of unequal bargaining power or overreaching” (D. H. Overmeyer Co. v Frick Co., 405 US 174, 186).[5]
*710 Petitioner’s last contention, that the fee does not apply to a mere relocation of the existing pipes, is without merit. The code sections are clear and unambiguous: they apply to all tap-ins, whether new or by replacement. Of course, respondent in an appropriate case, upon appropriate conditions, may waive the provisions pertaining to improvements (Village Law, § 7-730, subd 1).
Accordingly, the motion is denied without prejudice to renewal upon a hearing to be scheduled by the Calendar Clerk on 10 days’ written notice by petitioner who shall file a note of issue and pay the fee therefor. All notices for pretrial discovery must be served within 10 days after service of a copy of the order hereon, with notice of entry, and all pretrial proceedings must be completed or waived prior to the hearing hereon. The hearing shall be limited to the following issues: (1) is the tap-in fee of $15,000 unconscionable, taking into account (but not exclusively) all of the factors mentioned in this opinion; and (2) has petitioner consented to pay the scheduled fee. The trier of the facts may answer one or both of the aforesaid questions.

. The record does not indicate the acreage involved or the number of living units to be served by respondent’s water system.

. Petitioner, in its brief, argues that the fee only falls upon developers. In sum, petitioner is contending that the code deprives it of due process since its application is discriminatory. No proof has been offered to substantiate this allegation and the code, as drawn, applies to all potential tap-in users. Nonetheless, were the issue properly raised, the court is of the opinion that a classification limiting tap-in fees to new users *707 only has a rational basis and would not be constitutionally infirm (Matter of Marino v Town ofRamapo, 68 Mise 2d 44, 61-63).

. Alternatives exist such as financing under the Local Finance Law, property taxation under the Beal Property Tax Law, creation of special improvement or assessment districts under article 5 of the Village Law, etc. (see Opn No. 69-346, 25 Opns St Compt, 1969, p 169, supra). That the village fathers have chosen local financing coupled with partial recoupment is the exercise of legislative wisdom, which if permitted by statute, cannot be the subject of judicial review per se.

. The within fee schedule requires actual payment at the time the tap-in permit is issued and, therefore, is not similar to the advance payment (loan) condemned in Rothrock Syosset v Kreutzer (3 Misc 2d 64, revd on other grounds 2 AD2d 777, lv to app den 2 AD2d 814).

. Petitioner does not claim economic duress (see Austin Instrument v Loral Corp., 29 NY2d 124; 13 Williston, Contracts [3d ed], § 1617; cf. Paramount Film Distr. Corp. *710 v State of New York, 30 NY2d 415; Five Boro Elec. Contrs. Assn. v City of New York, 12 NY2d 146).